[Civ. No. 27147. Second Dist., Div. One. Sept. 19, 1963.]

EDWARD STONE et al., Plaintiffs and Respondents, v. HERBERT P. TURTON, as City Building Superintendent, etc., et al., Defendants and Appellants.

Donald E. Olson, City Attorney (Culver City), for Defendants and Appellants.

David S. Smith for Plaintiffs and Respondents.

WOOD, P. J.—■ This is an appeal by the building superintendent and the members of the Planning Commission of Culver City from a judgment in a mandamus proceeding: (1) ordering the superintendent to grant the application of petitioners for a building permit to construct apartment buildings on three lots in Culver City, and to issue the permit, and (2) ordering the members of the commission to desist from interfering with the granting of said permit.

In January 1955 petitioners were the owners of a parcel of land, consisting of approximately 40 acres zoned for single-family residential use, in Culver City. In that month petitioners filed, in the office of the city engineer of the city, a tract map of Tract No. 21302, which tract consisted of a portion of the parcel of land referred to above divided into 97 lots. On August 10, 1955, the planning commission of the city granted petitioners' application for a zone variance with respect to Lots 1 through 10 of Tract No. 21302, whereby petitioners were authorized to construct apartment houses on said lots.

At all times herein mentioned section 16.10, subdivision A, of Ordinance No. CS-147 of the city provided, in part: "If the use authorized by any variance, exception or modification is, or has been, unused, abandoned or discontinued for a period of six (6) months, or the conditions of the variance have not been complied with, said variance, exception or modification shall become null and void and of no effect."

In October 1956 (approximately 14 months after the application for a zone variance was granted) the building department

of the city issued a building permit authorizing petitioners to construct an apartment house on Lots 4, 5, and 6 of Tract No. 21302. In May 1957 the apartment house was completed. In June 1957 the city and petitioners entered into an agreement regarding the conditions to be fulfilled by petitioners with respect to subdividing Tract No. 22611, which tract consisted of the portion of the 40-acre parcel which was not included in Tract No. 21302. In said agreement it was stated that the zone variance granted to petitioners on August 10, 1955, "was validly exercised within the meaning of Ordinance No. CS-147." In August 1957 (approximately two years after the application for a zone variance was granted, and approximately three months after the apartment house on Lots 4, 5 and 6 was completed) the building department of the city issued a building permit authorizing petitioners to construct an apartment house on Lots 7 and 8 of Tract No. 21302, and on one lot in Tract No. 22611. (Appellants state that the lot in Tract No. 22611 was substituted for a lot in Tract No. 23102.) In September 1957 the city council of the city approved the final tract map of Tract No. 22611 by Resolution No. CS-3671, in which it was stated that the variance granted on August 10, 1955, "was validly exercised within the meaning of Ordinance No. CS-147." In February 1958 the city and petitioners entered into an "Amended Agreement," which, by its terms, superseded the agreement made on June 1957, regarding the conditions to be fulfilled by petitioners with respect to subdividing Tract No. 22611, and provided that all conditions be complied with within one year from the date thereof. In April 1958 the apartment house on Lots 7 and 8 of Tract No. 21302 and one lot of Tract No. 22611 was completed.

About March 1, 1962 (approximately six and a half years after the zone variance was granted, and approximately four years after the apartment house on Lots 7 and 8 of Tract No. 21302 and one lot of Tract No. 22611 had been completed) petitioners applied to the building department for a permit authorizing the construction of apartment houses on the "balance of property" referred to in the zone variance granted on August 10, 1955. The building superintendent refused to accept petitioners' application for a permit on the ground that the variance granted on August 10, 1955, had become null and void under the provisions of section 16.10, subdivision A, of Ordinance No. CS-147.

In June 1962, petitioners filed a petition in the superior

court for a writ of mandate ordering the building superintendent to grant the application of petitioners for a building permit to construct apartments on the balance of the lots referred to in the variance, granted on August 10, 1955, and ordering the members of the planning commission to desist from interfering with the granting of such permit.

In an answer to the petition the superintendent and the members of the commission alleged, among other things, that, under the provisions of Ordinance No. CS-147, section 16.10, subdivision A, the variance became null and void and of no effect on February 10, 1956 (i.e., six months after the variance was granted), for the reason that the variance had not been "exercised" within the meaning of said section within said six-month period, and that petitioners had failed to exhaust administrative remedies available to them under Ordinance No. CS-383, section 8, subdivision (f).

The court found, in effect, that petitioners had complied with the provisions of Ordinance No. CS-147, and also found, among other things, as follows: the City Council of Culver City adopted the uniform building code for the city and designated the building superintendent as the "Building Official" referred to in said uniform code, and required that before commencement of construction of improvements on real property in the city, a building permit must be obtained from said building superintendent, and that defendant Turton is the building superintendent and the person required to issue building permits; it is the mandatory duty of Turton, as building superintendent, to accept the application of petitioners for a building permit and to issue such permit to petitioners; it is the mandatory duty of the planning commission to give effect to the variance, and not to "interfere with the application" for a permit; the city does not provide for a hearing, nor for an administrative appeal, in the event a building permit is improperly refused, "as here involved"; it is not true that Ordinance No. CS-383 provides a remedy available to grant relief sought by petitioners herein.

Appellants (building superintendent and members of the planning commission) contend that respondents (petitioners) failed to exhaust their administrative remedies in that they did not appeal to the board of zoning adjustment of the city, under the provisions of Ordinance No. CS-383, section 8, subdivision (f), from the refusal of the building superintendent to accept (and grant) their application for a building permit.

Ordinance ·No. CS-383 (regarding planning commission and zoning adjustment) of the city provides for the establishment of a planning commission, consisting of nine members, and of a board of zoning adjustment, consisting of three members of the planning commission, and prescribes the powers of the commission and of the board.

Section 8 of that ordinance (No. CS-383) provides that the board of zoning adjustment shall have the power to hear and decide, among other things: "(f) Appeals to the Board where it is alleged by the appellant that there is error in any order, requirement, permit, decision, or determination made by the Planning Director or any other City Official other than members of the Planning Commission or the City Council, in the administration or enforcement of the Zoning Ordinance." Section 10 provides: "The decisions of the Board of Zoning Adjustment shall be final unless appeal is taken therefrom by any interested person, to the City Council . . . ."

Part 18 of the Zoning Ordinance (No. CS-147), which is entitled "Enforcement," provides: "The enforcement of this Ordinance shall be through, but not limited to, the Building Department of the City of Culver City, and it shall be the duty of all law enforcing officers to aid therein. All departments, officials and public employees of the City of Culver City vested with the duty or authority to issue permits or licenses shall conform to the provisions of this Ordinance and shall issue no permit or license for uses, building, or purposes in conflict with the provisions of this Ordinance; and any such permit or license issued in conflict with the provisions of this Ordinance shall be null and void."

In *United States* v. *Superior Court,* 19 Cal.2d 189, 194 [120 P.2d 26], it was said: "It is now firmly established in this state that a litigant must invoke and exhaust an administrative remedy provided by statute before he may resort to the courts. Jurisdiction to entertain an action for judicial relief is conditioned upon a completion of the administrative procedure." It was also said therein, at page 195: "[I]t lies within the power of the administrative agency to determine in the first instance, and before judicial relief may be obtained, whether a given controversy falls within the statutory grant of jurisdiction."

Respondents contend that the provisions of Ordinance No. CS-383, section 8, subdivision (f), regarding appeal to the

board of adjustment, are not applicable to the refusal of the building superintendent to issue a building permit, for the reason that the duty of the superintendent to issue such a permit is imposed by the Building Code which is a separate code.

Ordinance No. CS-416, section 1, of the city provides that the city adopt the Uniform Building Code, subject to certain amendments. Section 2 provides, in part, that section 202(b) of the Uniform Building Code is amended to read: "The term 'Building Official' as used in said Uniform Building Code shall refer to the Building Superintendent or any duly qualified as designated employee of the Building Department."

As above indicated, under part 18 of the zoning ordinance (No. CS-147), the building department of the city is authorized to enforce the zoning ordinance, and it is further provided therein that all departments, officials, and public employees of the city vested with the authority to issue permits or licenses shall issue "no permit" for building or purposes in conflict with the zoning ordinance. Also as above shown, the building superintendent is a city official. He refused to accept or grant the application for the building permit, for the reason that in his opinion the building for which the permit was sought would conflict with the zoning ordinance. Under Ordinance No. CS-383 (regarding planning commission and zoning adjustment), the board of zoning adjustment is authorized to hear and decide appeals to that board regarding an alleged error in any order, permit, or decision of a city official (other than members of the planning commission or city council) in the administration or enforcement of the zoning ordinance. It thus appears that the petitioners herein had an administrative remedy of appeal to the board of zoning adjustment.

The judgment is reversed.

Lillie, J., concurred.