[No. S086787. July 12, 2001.]

NORTON STYNE, Plaintiff and Appellant, v.
CONNIE STEVENS et al., Defendants and Respondents.

## COUNSEL

Bronson, Bronson & McKinnon, Stroock & Stroock & Lavan, Barry B. Langberg, Deborah Drooz and Michael J. Niborski for Plaintiff and Appellant.

Rosoff, Schiffres & Barta, Howard L. Rosoff; Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, Patricia L. Glaser and Elizabeth G. Chilton for Defendants and Respondents.

Geffner & Bush, Leo Geffner, Ira L. Gottlieb and Steven K. Ury for the Directors Guild of America, Screen Actors Guild, Writers Guild of America and American Federation of Television and Radio Artists as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**BAXTER, J.**—Sections 1700 to 1700.47 of the Labor Code (hereafter sometimes the Talent Agencies Act, or Act)[1] regulate " '[t]alent agenc[ies]' " (§ 1700.4, subd. (a))—persons or corporations that procure professional "employment or engagements" (*ibid.*) for creative or performing "artists" (*ibid.*) in the entertainment media, including theater, movies, radio, and television (*id.*, subd. (b)). One must have a license to act as a talent agency (§ 1700.5), and any contract of an unlicensed person for talent agency services is illegal and void *ab initio*. All "cases of controversy arising under [the Act]" must be "refer[red]" by the parties to the Labor Commissioner (Commissioner) for resolution, subject to de novo appeal to the superior court. (§ 1700.44, subd. (a).) No "action or proceeding shall be brought pursuant to [the Act]" for any "violation" that occurred more than one year previously. (*Id.*, subd. (c).)

Plaintiff Norton Styne sued defendant Connie Stevens, a prominent entertainer, for sums allegedly due under an oral contract. Before trial, Stevens

---

[1] All further unlabeled statutory references are to the Labor Code unless otherwise indicated.

sought summary judgment on grounds that the alleged contract involved Styne's procurement of professional employment for Stevens, that Styne thus acted as a talent agency but lacked the necessary license, and that the contract was therefore illegal and void under the Talent Agencies Act. The trial court denied the motion, reasoning that Styne's activities on Stevens's behalf were not of a kind governed by the Act. Later, the court refused Stevens's request for a jury instruction presenting her Act-based defense.

The jury found for Styne, but the trial court granted Stevens's motion for a new trial. The court concluded it had erred in refusing Stevens's request for a jury instruction on the requirements of the Talent Agencies Act.

Styne appealed the new trial order. He urged that the Talent Agencies Act was not involved in the parties' dispute because the trial evidence disclosed no activities requiring a license. In any event, he also asserted, Stevens's Act-based defense was barred by her failure to raise it, and submit it to the Commissioner, within the Act's one-year limitations period. Stevens responded that the evidence did suggest Styne had acted as a talent agency, and that Stevens was free to assert the consequent illegality of the contract *as a defense to Styne's court suit* without regard to the Act's statute of limitations or its requirement of first referral to the Commissioner.

The Court of Appeal reversed the new trial order and reinstated the verdict. The appellate court held that Stevens's defense under the Talent Agencies Act was barred because she had failed to invoke the Act, and to refer the matter to the Commissioner, within one year after she was served with Styne's complaint.

On review, we reach the following conclusions: Contrary to the Court of Appeal's holding, a *statute of limitations* does not bar a *defense* involving no claim for affirmative relief. Hence, section 1700.44, subdivision (c), the one-year limitations period contained in the Talent Agencies Act, did not affect the times within which Stevens could take actions necessary to assert her Act-based defense against Styne's suit for breach of contract. On the other hand, the Court of Appeal was correct insofar as it determined that under section 1700.44, subdivision (a), Stevens's Act-based claims, if colorable, must first be referred to the Commissioner for resolution. Stevens's claim that section 1700.44, subdivision (a) does not apply to defenses lacks merit.

By granting a new trial on grounds that an *instruction* concerning the Talent Agencies Act's requirements should have been given, the superior court necessarily determined, contrary to its prior assumption, that Stevens

has a colorable defense under the Act. The Court of Appeal agreed that the trial evidence permitted such an inference, and that conclusion appears correct. Accordingly, Stevens is entitled to maintain her Act-based defense, though it must be pursued in the first instance before the Commissioner.

As we explain in greater detail below, the appropriate disposition is therefore to reverse the judgment of the Court of Appeal, thus reinstating the new trial order. However, we will instruct the Court of Appeal to direct that new trial proceedings in the superior court be stayed pending submission to the Commissioner of issues arising under the Talent Agencies Act.

FACTS

In January 1996, Styne sued Stevens, asserting various theories arising from Stevens's claimed breach of contract. Styne's original and amended complaints alleged as follows: Styne was Stevens's longtime personal manager. He had devoted professional efforts that substantially led to Stevens's deal with Home Shopping Network (HSN) to feature Stevens as a celebrity spokesperson selling her own line of beauty products on cable television. Under the deal, Stevens's company would gain profits by selling products to HSN, which would then resell them to consumers. At the time of these events, Styne and Stevens had an oral "management contract," whereby Styne would "use his efforts to advance the career efforts of Stevens." In return, Stevens would pay Styne a commission of 10 percent of all "gross monies derived by Stevens . . . arising out of or in connection with Stevens'[s] professional endeavors." Between 1989 and the date of the complaint, Stevens's company made many sales of beauty products to HSN, and Stevens earned profits from these sales. Styne made demand on Stevens for his share of these profits, and Stevens refused to pay.

Stevens did not cross-complain. Her April 1996 answer asserted no defense under the Talent Agencies Act. However, in July 1997, after discovery, Stevens moved for summary judgment on grounds that the contract Styne alleged was void because Styne had no talent agency license. Stevens's theory was that Styne's various discussions with HSN, including those relating to the sale of Stevens's own beauty products, were efforts to "procure . . . employment or engagements" for Stevens in her capacity as an "artist" (§ 1700.4, subd. (a); see also id., subd. (b)), and thus were the services of a talent agency for which the Act required a license.[2]

In opposition, Styne did not dispute he lacked a talent agency license. However, he urged that (1) Stevens's defense, based on a claimed violation

---

[2]According to the motion, Styne's deposition indicated he discussed several concepts with HSN, including Stevens's appearance as a celebrity spokesperson for products marketed by HSN, projects involving "the production and marketing of records of STEVENS'[s]

of the Talent Agencies Act, was within the exclusive original jurisdiction of the Commissioner, (2) the defense was waived because not raised within the Act's one-year statute of limitations, and (3) Styne had not acted as a talent agency because, among other things, his efforts to help Stevens market her company's product line were not the procurement of her *employment or engagement* as an *artist*.

The trial court denied Stevens's motion for summary judgment "based on the grounds set forth in the opposing party's papers." In particular, the court opined that Stevens's claim that Styne had acted as an unlicensed talent agency was "without merit," because the income derived from HSN "was based upon sales generated from . . . products [of Stevens's company] sold to the public and not through the 'employment or engagement' of the artist. [Labor Code section 1700.4(a).] Connie Stevens was not employed by the Home Shopping Club."

Trial began in January 1998. At the outset, Stevens proposed an instruction that would require the jury to determine whether Styne had violated the Talent Agencies Act. The trial court ultimately refused the instruction.

The trial evidence, like that adduced on summary judgment, permitted an inference that, under an agreement with Stevens, Styne undertook extensive efforts to promote her employment with HSN as a celebrity spokesperson, and through record albums[3] and live concert performances to be produced by HSN. In numerous meetings with HSN personnel, Styne touted Stevens's wholesome image and communications skills. Styne provided HSN with detailed budgets and profit projections for the ideas he proposed. He set up a face-to-face meeting between Stevens and top HSN executives to cement a deal, and he took credit for bringing about the final arrangement with HSN. As before, the evidence also indicated that, while Stevens ultimately appeared on the network to promote her own company's products, she was not paid by HSN for these appearances as such, but instead derived revenue from sales of her company's products to HSN.

The jury found for Styne and awarded some $4.3 million in damages. Stevens moved for judgment notwithstanding the verdict (judgment n.o.v.), and alternatively, for a new trial. In the motion for judgment n.o.v., Stevens urged that the alleged contract was void for violation of the Talent Agencies Act. In the new trial motion, Stevens argued that the trial court had erred by

performances and STEVENS performing in concert," and finally the idea of Stevens's appearances on the network to promote her own line of products, to be purchased and resold by HSN.

[3]We note that efforts to secure *recording contracts* for artists "shall not of [themselves] subject a person or corporation to regulation and licensing" under the Talent Agencies Act. (§ 1700.4, subd. (a).)

refusing her proffered instruction allowing the jury to void the contract for violation of the Act if it concluded that Styne's activities were an attempt to procure professional employment for Stevens.

The trial court denied the motion for judgment n.o.v. However, the court granted the motion for new trial, agreeing with Stevens that it should have instructed the jury "re the requirements of the Talent [Agencies] Act."

Styne appealed from the new trial order. The Court of Appeal, Second Appellate District, Division Two, reversed. The appellate court first concluded that any dispute arising under the Talent Agencies Act must first be submitted to the Commissioner, and no exception arises when a violation of the Act is raised solely as a defense in a court suit. Second, the Court of Appeal reasoned that such a defense had been waived in any event, because Stevens had failed to raise it, or submit it to the Commissioner, within one year after the statute of limitations set forth in section 1700.44 began to run. For purposes of "defensive application," the Court of Appeal held, the limitations period commenced when Stevens received formal notice of Styne's claim by service of process in his lawsuit.

We granted review.

DISCUSSION

1. *Overview of Talent Agencies Act.*

■ As indicated above, the Talent Agencies Act (§ 1700 et seq.) regulates the activities of a "talent agency," i.e., "a person or corporation who engages in the occupation of procuring, offering, promising, or attempting to procure *employment or engagements* for an *artist or artists . . . .*" (§ 1700.4, subd. (a), italics added.) "Artists" include stage and screen actors; radio and musical artists; musical organizations; theater, movie, and radio directors; writers; cinematographers; composers; lyricists; arrangers; models; "and other artists and persons rendering professional services in motion picture, theatrical, radio, television and other entertainment enterprises." (*Id.*, subd. (b).) The Act is remedial; its purpose is to protect artists seeking professional employment from the abuses of talent agencies. (*Waisbren v. Peppercorn Productions, Inc.* (1995) 41 Cal.App.4th 246, 254 [48 Cal.Rptr.2d 437] (*Waisbren*); *Buchwald v. Superior Court* (1967) 254 Cal.App.2d 347, 350-351 [62 Cal.Rptr. 364].)

As also indicated, the Act's definition of a talent agency is narrowly focused on efforts to secure professional "employment or engagements" for

an "artist or artists." (§ 1700.4, subd. (a).) Thus, it does not cover other services for which artists often contract, such as personal and career *management* (i.e., advice, direction, coordination, and oversight with respect to an artist's career or personal or financial affairs) (*Park v. Deftones* (1999) 71 Cal.App.4th 1465, 1469-1470 [84 Cal.Rptr.2d 616] (*Park*); *Waisbren, supra*, 41 Cal.App.4th 246, 252-253), nor does it govern assistance in an artist's business transactions other than professional employment.

Among other things, the Act provides that "[n]o person shall engage in or carry on the occupation of a talent agency without first procuring a license . . . from the Labor Commissioner." (§ 1700.5.) The weight of authority is that even the incidental or occasional provision of such services requires licensure. (*Park, supra*, 71 Cal.App.4th 1465, 1470; *Waisbren, supra*, 41 Cal.App.4th 246, 253-261; but see *Wachs v. Curry* (1993) 13 Cal.App.4th 616, 627-628 [16 Cal.Rptr.2d 496].) In furtherance of the Act's protective aims, an unlicensed person's contract with an artist to provide the services of a talent agency is illegal and void. (*Waisbren, supra*, at p. 261; *Buchwald v. Superior Court, supra*, 254 Cal.App.2d 347, 351.)

2. *Statute of limitations.*

After providing that all "cases of controversy" arising thereunder "shall [first be] refer[red]" by the parties to the Commissioner (§ 1700.44, subd. (a)), the Talent Agencies Act further declares that "[n]o *action or proceeding* shall be *brought* pursuant to [the Act] with respect to any violation which is alleged to have occurred more than *one year* prior to commencement of the action or proceeding" (*id.*, subd. (c), italics added). The Court of Appeal ruled that this limitations period applied to Stevens's *defensive* use of the Act, and that it began to run against her when Styne filed and served his complaint against her in January 1996. (See *Park, supra*, 71 Cal.App.4th 1465, 1469.) As the Court of Appeal noted, Stevens did not raise the Act as a defense until she filed her motion for summary judgment in August 1997. In the Court of Appeal's view, Stevens's Act-based defense was thus barred by her failure to invoke it, or to submit it to the Commissioner, within the applicable one-year period.

Stevens insists the Court of Appeal's holding contravenes the clear rule that statutes of limitations do not apply to defenses. We agree. Under well-established authority, a defense may be raised at any time, even if the matter alleged would be barred by a statute of limitations if asserted as the basis for affirmative relief. The rule applies in particular to contract actions. One sued on a contract may urge defenses that render the contract unenforceable, even if the same matters, alleged as grounds for restitution after

rescission, would be untimely. (E.g., *Estate of Cover* (1922) 188 Cal. 133, 140 [204 P. 583]; *Bank of America v. Vannini* (1956) 140 Cal.App.2d 120, 127 [295 P.2d 102]; *Stiles v. Bodkin* (1941) 43 Cal.App.2d 839, 844 [111 P.2d 675]; see *French v. Construction Laborers Pension Trust* (1975) 44 Cal.App.3d 479, 485 [118 Cal.Rptr. 731] (*French*) [nonjudicial rescission on grounds of fraud and mistake]; *Cox v. Schnerr* (1916) 172 Cal. 371, 382 [156 P. 509] [quiet title suit based on fraudulent deed]; 3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 423, p. 532.)

Statutes of limitations bar "actions or proceedings" (e.g., *French, supra,* 44 Cal.App.3d 479, 485), thus guarding against stale claims and affording repose against long-delayed litigation. They act as shields, not swords. (*Id.* at p. 486.) Thus, we long ago explained with respect to a fraud defense that "neither the limitation of the statute nor the doctrine of laches will operate to bar the defense of the invalidity of the agreement upon the ground of fraud, for so long as the plaintiff is permitted to come into court seeking to enforce the agreement, the defendant may allege and prove fraud as a defense. In short, it is not incumbent upon one who has thus been defrauded to go into court and ask relief, but he may abide his time, and when enforcement is sought against him excuse himself from performance by proof of the fraud." (*Estate of Cover, supra,* 188 Cal. 133, 140-141.) The same reasoning applies to any grounds for asserting the illegality of the contract upon which the plaintiff sues.

As the United States Supreme Court recently stated in another context, "the object of a statute of limitation in keeping 'stale litigation out of the courts,' . . . would be distorted if the statute were applied to bar an otherwise legitimate defense to a timely lawsuit, for limitation statutes 'are aimed at lawsuits, not at the consideration of particular issues in lawsuits.' . . ." (*Beach v. Ocwen Fed. Bank* (1998) 523 U.S. 410, 415-416 [118 S.Ct. 1408, 1411, 140 L.Ed.2d 566], citations omitted.)

Styne suggests that under *Park,* the defendant in a contract suit must assert a Talent Agencies Act defense, and submit it to the Commissioner, within one year after commencement of the action. In *Park,* however, the matter *was* submitted to the Commissioner within one year after the action began, and the Court of Appeal simply endorsed the Commissioner's conclusion that it was therefore timely. (*Park, supra,* 71 Cal.App.4th 1465, 1469.) There is no indication the issue whether statutes of limitations apply *at all* to defenses was considered. Hence, *Park* is not authority for the proposition that the Act's statute of limitations may bar assertion of the Act as a defense.

 Indeed, the Commissioner, whose interpretation of a statute he is charged with enforcing deserves substantial weight (see, e.g., *Kelly v. Methodist Hospital of So. California* (2000) 22 Cal.4th 1108, 1118 [95 Cal.Rptr.2d 514, 997 P.2d 1169]), has consistently held that the one-year limitations period of section 1700.44, subdivision (c) does not apply to pure defenses arising under the Talent Agencies Act. (E.g., *Hyperion Animation Co., Inc. v. Toltec Artists, Inc.* (Cal.Lab.Com., Dec. 27, 1999) TAC No. 7-99 [pure defenses not untimely though invoked more than one year after both challenged contracts and commencement of agent's superior court action]; *Sevano v. Artistic Productions, Inc.* (Cal.Lab.Com., Mar. 20, 1997) TAC No. 8-93 [defense not untimely because not raised within one year after plaintiff's demand for arbitration]; *Rooney v. Levy* (Cal.Lab.Com., Feb.10, 1995) TAC No. 66-92 [Act's statute of limitations does not bar Commission petition seeking declaration that contract is void based on Act "violation" that occurred more than one year earlier; limitations period does not apply to defenses]; *Church v. Brown* (Cal.Lab.Com., June 2, 1994) TAC No. 66-92 [same]; but see *Moreno v. Park* (Cal.Lab.Com., Jan. 20, 1998) TAC No. 9-97.)[4]

 Styne asserts that Stevens has actually sought affirmative relief by asking, in effect, for a declaration that the contract is void and unenforceable. But the cases belie such an argument; one who raises the defense that a contract is illegal and unenforceable necessarily asks for a determination to that effect. If the result the defendant seeks is simply that he or she owes no obligations under an agreement alleged by the plaintiff, the matter must be deemed a defense to which the statute of limitations does not apply.

Styne notes that the Talent Agencies Act limits "actions and proceedings" (§ 1700.44, subd. (c)) and contains no *exception* for defensive use, though the Legislature must have understood that artists would routinely commence "proceedings" before the Commissioner, seeking to avoid their contractual commitments by claiming violations of the Act. But the Act's phrase "actions and proceedings"—which parallels the universal statute of limitations reference to "actions" (see, e.g., Code Civ. Proc., § 335 et seq.)—must be construed in the same fashion, as referring to claims for affirmative relief. Nothing in the language of section 1700.44, subdivision (c) suggests that, in contrast with other statutory limitations periods, it was intended to bar a mere defense to a claim for relief initiated by another.

---

[4]The Commissioner does not have a system of publication in which precedential decisions under the Talent Agencies Act are printed. This does not obviate the rule of deference to administrative construction, though it may weaken an inference that the Legislature was aware of a prior administrative interpretation when adopting or amending statutory language. (See *Robinson v. Fair Employment & Housing Com.* (1992) 2 Cal.4th 226, 235, fn. 7 [5 Cal.Rptr.2d 782, 825 P.2d 767].) Moreover, the Rules of Court do not bar our citation of such unpublished decisions to demonstrate administrative construction. (See Cal. Rules of Court, rule 977(a) [prohibiting citation of unpublished Court of Appeal and appellate department decisions].)

We therefore conclude that the statute of limitations set forth in section 1700.44, subdivision (c) does not bar Stevens's assertion of her contract defense based on Styne's alleged violation of the Talent Agencies Act.[5]

### 3. *Labor Commissioner's jurisdiction.*

■ The Talent Agencies Act specifies that "[i]n cases of *controversy* arising under this chapter, the parties involved *shall refer* the *matters in dispute* to the Labor Commissioner, who shall hear and determine the same, subject to an appeal . . . to the superior court where the same shall be heard de novo." (§ 1700.44, subd. (a), italics added.) "The Commissioner has the authority to hear and determine various disputes, *including the validity of artists' manager-artist contracts and the liability of the parties thereunder.* ([*Buchwald v. Superior Court, supra,* 254 Cal.App.2d 347,] 357.) The reference of disputes involving the [A]ct to the Commissioner is *mandatory. (Id.* at p. 358.) Disputes *must* be heard by the Commissioner, and all remedies before the Commissioner *must* be exhausted before the parties can proceed to the superior court. (*Ibid.*)" (*REO Broadcasting Consultants v. Martin* (1999) 69 Cal.App.4th 489, 494-495 [81 Cal.Rptr.2d 639] (*REO Broadcasting*), italics in original; see also *Garson v. Div. of Labor Law Enforcement* (1949) 33 Cal.2d 861, 864-866 [206 P.2d 368]; *Collier & Wallis, Ltd., v. Astor* (1937) 9 Cal.2d 202, 204-206 [70 P.2d 171]; *Humes v. MarGil Ventures, Inc.* (1985) 174 Cal.App.3d 486, 494-495 [220 Cal.Rptr. 186] (*Humes*); *Buchwald v. Superior Court, supra,* at pp. 358-359.)

■■■ When the Talent Agencies Act is invoked in the course of a contract dispute, the Commissioner has exclusive jurisdiction to determine his jurisdiction over the matter, including whether the contract involved the services of a talent agency. (*Buchwald v. Katz* (1972) 8 Cal.3d 493, 496 [105

---

[5]As an additional basis for arguing that her defense is not barred, Stevens cites the maxim that the illegality of a contract need not be pled, can be asserted at any time, and is never waived. (See 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 444, p. 397.) However, this principle appears concerned not with limitations periods as such, but with the procedural issue whether a defense is waived by failure to assert it in a timely fashion once a lawsuit has commenced. Moreover, it is not clear that *all* issues of illegality in a contract fall within the unwaivable category. (*Ibid.*) Because we conclude on other grounds that *section 1700.44, subdivision (c)* does not bar Stevens's defense, we do not reach Steven's additional argument. On the other hand, Styne suggests that Stevens's claim of illegality is among those defenses which *must* be correctly and timely pled. Styne notes that Stevens never pled this defense in her answer and raised it only by her motion for summary judgment. But again, section 1700.44, subdivision (c), a *statute of limitations*, is not concerned with the general procedures or time limits for asserting defenses to a lawsuit. Styne did not argue, in his opposition to the new trial order here under review, that Stevens had waived her Act-based defense by failing to follow the general rules of timely and correct pleading. He has only vaguely alluded to that issue on appeal, *and the Court of Appeal did not address it.* Thus, the issue is not before us.

Cal.Rptr. 368, 503 P.2d 1376]; see *Buchwald v. Superior Court, supra,* 254 Cal.App.2d 347, 360-361.)[6] Having so determined, the Commissioner may declare the contract void and unenforceable as involving the services of an unlicensed person in violation of the Act. (See, e.g., *Park, supra,* 71 Cal.App.4th 1465, 1468; *REO Broadcasting, supra,* 69 Cal.App.4th 489, 492, 500; *Humes, supra,* 174 Cal.App.3d 486, 492, 494-495.) It follows that a claim to this effect must first be submitted to the Commissioner, and that

---

[6]The Commissioner's exclusive jurisdiction to determine his jurisdiction over issues colorably arising under the Talent Agencies Act thus empowers him alone to decide, in the first instance, whether the facts do bring the case within the Act. When statutes require a particular class of controversies to be submitted *first* to an administrative agency as a *prerequisite* to judicial consideration, and the parties reasonably dispute whether their case falls into that category, it lies within the *agency*'s power "to determine *in the first instance, and before judicial relief may be obtained,* whether [the] controversy falls within the [agency's] statutory grant of jurisdiction [citations]." (*United States v. Superior Court* (1941) 19 Cal.2d 189, 195 [120 P.2d 26], italics added; see *Morton v. Superior Court* (1970) 9 Cal.App.3d 977, 981-982 [88 Cal.Rptr. 533]; *Smith v. City of Duarte* (1964) 228 Cal.App.2d 267, 269-270 [39 Cal.Rptr. 524]; *People v. Coit Ranch, Inc.* (1962) 204 Cal.App.2d 52, 57-58 [21 Cal.Rptr. 875] (*Coit Ranch*) [barring assertion of court defense, without first exhaustion of administrative remedy, where agency has jurisdiction to determine its jurisdiction]; see also *Stone v. Turton* (1963) 220 Cal.App.2d 417, 421-422 [33 Cal.Rptr. 853]; but see *County of Alpine v. County of Tuolumne* (1958) 49 Cal.2d 787, 798 [322 P.2d 449] [rule does not apply where the agency is given no jurisdiction to make a determination "of the type involved"].) As indicated in the text, cases involving the Talent Agencies Act are in accord. (*Buchwald v. Katz, supra,* 8 Cal.3d 493, 496 [where facts alleged in court permitted inference that parties' relationship involved unlicensed talent agency services, Commissioner had exclusive jurisdiction to determine his jurisdiction over the dispute, first ascertaining whether plaintiff had in fact acted as talent agency by securing employment and bookings pursuant to contract]; see *Buchwald v. Superior Court, supra,* 254 Cal.App.2d 347, 360 [same, citing *United States v. Superior Court, supra,* 19 Cal.2d 189, 195].)

This situation is distinct from that which arises when parties dispute whether an injured person is entitled to one or the other of two *mutually exclusive* kinds of relief in *separate and parallel* fora, e.g., tort damages to be awarded by a court, or statutory benefits for an industrial injury administered by the Workers' Compensation Appeals Board. In that instance, the two tribunals have *concurrent* jurisdiction *to determine their subject matter jurisdiction* over the dispute, and the first forum invoked has jurisdiction, to the exclusion of the other, to finally determine if the facts give it, rather than the other, jurisdiction over the merits of the controversy. (*Scott v. Industrial Acc. Com.* (1956) 46 Cal.2d 76, 81-89 [293 P.2d 18]; see also, e.g., *Taylor v. Superior Court* (1956) 47 Cal.2d 148, 151 [301 P.2d 866]; *Jones v. Brown* (1970) 13 Cal.App.3d 513, 520-521 [89 Cal.Rptr. 651]; but see *Sea World Corp. v. Superior Court* (1973) 34 Cal.App.3d 494, 496-503 [110 Cal.Rptr. 232].)

Here, and in many similar cases under the Talent Agencies Act, a conclusion that the superior court has the prior exclusive right to determine the issue of jurisdiction would undermine the clear purpose of section 1700.44, subdivision (a), and the principle of exhaustion of administrative remedies generally, by giving the court, not the Commissioner, the exclusive right to decide in the first instance *all the legal and factual issues on which an Act-based defense depends.* Once the court resolved whether Styne had acted as a talent agency under the contract, and even if the court concluded he *had done so,* there would be little or nothing left for the Commissioner to resolve.

forum must be exhausted, before the matter can be determined by the superior court.

Our conclusion that section 1700.44, by its terms, gives the Commissioner exclusive original jurisdiction over controversies arising under the Talent Agencies Act comports with, and applies, the general doctrine of exhaustion of administrative remedies. With limited exceptions, the cases state that where an adequate administrative remedy is provided by statute, resort to that forum is a "jurisdictional" prerequisite to judicial consideration of the claim. (E.g., *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 70 [99 Cal.Rptr.2d 316, 5 P.3d 874]; *Sierra Club v. San Joaquin Local Agency Formation Com.* (1999) 21 Cal.4th 489, 495 [87 Cal.Rptr.2d 702, 981 P.2d 543]; *Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 292-293 [109 P.2d 942, 132 A.L.R. 715] (*Abelleira*).)

██ Stevens nonetheless argues that referral to the Commissioner is not necessary when the artist alleges a violation of the Talent Agencies Act solely as a *defense* in a garden-variety court action for breach of contract. She urges that section 1700.44, subdivision (a) requires referral only of "cases" (*ibid.*) arising under the Act. In Stevens's view, a "case" is limited to a *claim for affirmative relief* that *itself relies* on the Act. She insists that when an artist merely asserts the Act as a defense to the agent's civil suit for breach of contract, and seeks no affirmative relief for herself, no "case" arises for referral to the Commissioner.

. Stevens misreads the statute. Section 1700.4, subdivision (a) specifies that in all "cases *of controversy*" arising under the Talent Agencies Act, "the *parties involved* shall refer the *matters in dispute*" to the Commissioner. (Italics added.) This broad language plainly requires all such "controvers[ies]" and "dispute[s]" between "parties" to be examined in the first instance by the Commissioner, not merely those "controvers[ies]" and "dispute[s]" where the "part[y]" invoking the Act seeks affirmative relief.[7]

A number of courts, and the Commissioner himself, have assumed that even when the Talent Agency Act is first invoked by the defendant in a civil

---

[7]At oral argument, Stevens's counsel asserted, without support, that only a claim for affirmative relief based on the Talent Agencies Act is a controversy "arising under" the Act (§ 1700.44, subd. (a)), and that matters asserted purely for defensive purposes do not qualify. The primary federal jurisdictional statute, 28 United States Code section 1331, gives United States district courts original jurisdiction of "all civil actions *arising under* the Constitution, laws, or treaties of the United States" (italics added); in that context, the "arising under" language has been construed to extend only to matter appearing on the face of the plaintiff's complaint, and not as an affirmative defense. (See *Louisville & Nashville Railroad v. Mottley* (1908) 211 U.S. 149, 152 [29 S.Ct. 42, 43, 53 L.Ed. 126]; 13 Wright et al., Federal Practice and Procedure (2d ed. 1984) § 3522, pp. 72-73.) But the language of the two statutes is distinguishable in a critical respect. The federal law speaks of "civil actions," while section

action, and whether or not the defendant seeks affirmative relief, the matter is properly submitted to the Commissioner in the first instance. (See, e.g., *Park, supra,* 71 Cal.App.4th 1465, 1468-1469 [breach of contract suit, defense of illegality based on Act; no indication defendant sought affirmative relief]; *REO Broadcasting, supra,* 69 Cal.App.4th 489, 492 [same; defendant originally sought, but ultimately waived, claim for damages]; *Humes, supra,* 174 Cal.App.3d 486, 492 [same; defendant sought return of commissions paid]; *Ivy v. Howard* (Cal.Lab.Com., Oct. 27, 1994) TAC No. 18-94 [same; no claim for affirmative relief].)[8] This assumption conforms to the general principle that the requirement of exhaustion of administrative remedies applies to defenses. (E.g., *South Coast Regional Com. v. Gordon* (1977) 18 Cal.3d 832, 836-838 [135 Cal.Rptr. 781, 558 P.2d 867] [landowner who failed to seek coastal zone building permit cannot raise "vested rights" defense in action for violation of Coastal Zone Conservation Act]; *People v. West Publishing Co.* (1950) 35 Cal.2d 80, 87-88 [216 P.2d 441] [corporation sued by state for use taxes due cannot raise tax-calculation issues after failing to pursue available administrative remedies]; *Aguirre v. Lee* (1993) 20 Cal.App.4th 1646, 1654 [25 Cal.Rptr.2d 367] [landlord sued for rent control violation cannot raise exemption defense after failing to seek exemption permit from rent control board]; *Coit Ranch, supra,* 204 Cal.App.2d 52, 56-58 [farmer sued by Director of Agriculture for past-due cantaloupe advertising assessment cannot, for the first time, raise ultra vires defense available in administrative proceedings before the director].)

Stevens insists *Waisbren, supra,* 41 Cal.App.4th 246 supports a rule that defenses under the Talent Agencies Act need not be submitted to the Commissioner. In *Waisbren,* artists defending a court suit for breach of contract won summary judgment on grounds the agreement was void as involving unlicensed talent agency services. The Court of Appeal affirmed, rejecting the plaintiff's claims that the mere "occasional" or "incidental" procurement of employment for artists requires no license, and that the sanction of voiding the contract was too harsh. (*Id.* at pp. 251-262.) As Stevens points out, there is no indication the matter was first submitted to the Commissioner, and the Court of Appeal did not suggest this barred a judicial determination of the merits.

However, it appears neither party raised the exhaustion issue in *Waisbren,* and the Court of Appeal did not address it. An opinion is not authority for a point not raised, considered, or resolved therein. (E.g., *People v. Castellanos*

---

1700.44, subdivision (a) speaks more broadly of "cases of controversy." We find Stevens's interpretation unpersuasive.

[8]We recognize, of course, that cases are not dispositive authority for points not directly considered. (See text discussion, *post.*)

(1999) 21 Cal.4th 785, 799, fn. 9 [88 Cal.Rptr.2d 346, 982 P.2d 211]; *San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 943 [55 Cal.Rptr.2d 724, 920 P.2d 669].)

Stevens asserts that requiring an artist to submit a mere defense to the Commissioner contravenes the Talent Agencies Act's remedial purposes. To avoid this result, she urges, we should hold the court and the Commissioner have "concurrent" original jurisdiction in such cases. But the plain meaning of section 1700.44, subdivision (a), and the relevant case law, negate any inference that courts share original jurisdiction with the Commissioner in controversies arising under the Act. On the contrary, the Commissioner's original jurisdiction of such matters is exclusive.

Moreover, Stevens's policy arguments are unpersuasive. No reason appears why the Talent Agencies Act's purposes to protect artists from unscrupulous and unqualified talent agencies warrant a conclusion that an artist's claims for affirmative relief under the Act must first be submitted to the Commissioner, but that an artist's defenses under the Act need not be. In both instances, referral to the Commissioner serves the intended purpose of the doctrine of exhaustion of administrative remedies—to reduce the burden on courts while benefiting from the expertise of an agency particularly familiar and experienced in the area. (See, e.g., *Rojo v. Kliger* (1990) 52 Cal.3d 65, 83 [276 Cal.Rptr. 130, 801 P.2d 373] [Department of Fair Housing and Employment]; *Westlake Community Hosp. v. Superior Court* (1976) 17 Cal.3d 465, 476-477 [131 Cal.Rptr. 90, 551 P.2d 410] [internal hospital board]; *Abelleira, supra,* 17 Cal.2d 280, 306 [California Employment Commission].) The Commissioner's expertise in applying the Act is particularly significant in cases where, as here, the essence of the parties' dispute is whether services performed were by a talent agency for an artist.

Stevens implies that requiring submission to the Commissioner of defenses under the Talent Agencies Act will somehow inhibit artists from availing themselves of its protective purposes. We disagree. When an issue under the Act arises in this fashion, the appropriate course is simply to stay the superior court proceedings and file a "petition to determine controversy" before the Commissioner. (See Cal. Code Regs., tit. 8, § 12022; *REO Broadcasting, supra,* 69 Cal.App.4th 489, 492; see also *Park, supra,* 71 Cal.App.4th 1465, 1468.)[9] Accordingly, we agree with Styne and the Court of Appeal that when the defendant in a court suit raises a colorable defense

---

[9]Stevens appears concerned that when an artist faces a civil suit for breach of contract, the Talent Agencies Act's *limitations period* (§ 1700.44, subd. (c)) might preclude submission to the Commissioner of a defense based on a "violation" of the Act (*ibid.*) that occurred more than one year previously. As amici curiae, the Directors Guild of America, the Writers Guild

based on a violation of the Act, the merits of that issue cannot be considered by the court until it has first been submitted to, and examined by, the Commissioner.[10]

### 4. *Disposition.*

The question remains how these principles should apply to the facts, and in the procedural posture, of this case. As indicated above, controversies colorably arising under the Talent Agencies Act are within the exclusive original jurisdiction of the Commissioner (§ 1700.44, subd. (a)), even when Act-based issues are first raised as an affirmative defense to a court suit. On the other hand, as we have also explained, the Act's statute of limitations (§ 1700.44, subd. (c)) does not restrict the time within such a defense may be raised and presented to the Commissioner.

Moreover, we are persuaded that although the parties to a controversy arising under the Act must first exhaust proceedings before the Commissioner, one who first asserts the Act as a defense against a lawsuit does not waive the defense insofar as he or she failed to pursue and exhaust the administrative remedy *before the suit was filed.* The Act simply requires that "controvers[ies]" thereunder be "refer[red]" by the parties to the Commissioner *when they "aris[e]"* (§ 1700.44, subd. (a)); it does not require any

of America, and the American Federation of Television and Radio Artists (collectively amici curiae) similarly worry that application of the Act's limitation period to defenses would inhibit the private arbitration of such disputes. But these concerns are unfounded for reasons we have explained in the prior part.

Amici curiae additionally argue that arbitration will be undermined by a requirement that artists' Talent Agencies Act defenses (particularly defensive claims that an alleged contract is void under the Act) must be referred to the Commissioner. But this assertion does not appear directed at the issue of defenses in particular. The contention raised by amici curiae, if valid at all, applies equally whether the artist seeks affirmative relief under the Act, or raises the Act only for defensive purposes. Moreover, the Talent Agencies Act specifically allows parties to provide in their contract that disputes thereunder shall be resolved by private arbitration, rather than by the Commissioner. (§ 1700.45.) Nothing in our reasoning restricts this right.

[10]We have indicated throughout that all claims or defenses which *colorably* arise under the Talent Agencies Act must be submitted to the Commissioner before consideration by the superior court, because the Commissioner has exclusive original jurisdiction not only to decide the merits of a controversy arising under the Act, but also to determine, in the first instance, whether the dispute actually falls within this statutory grant of authority. Adhering to this principle, we use the term "colorable" in its broadest sense. Certainly the superior court need not refer to the Commissioner a case which, despite a party's contrary claim, clearly has *nothing to do* with the Act. For example, an automobile collision suit between persons unconnected to the entertainment industry is manifestly not a controversy arising under the Act, and it cannot be made one by mere utterance of words. On the other hand, if a dispute in which the Act is invoked plausibly pertains to the subject matter of the Act, the dispute should be submitted to the Commissioner for first resolution of both jurisdictional and merits issues, as appropriate.

party to invoke the Commissioner's jurisdiction *before* such a controversy has arisen. The filing of a lawsuit may be the defendant's first inkling that such a controversy exists.

■ We therefore conclude that if this case presents any colorable basis for exercise of the Commissioner's jurisdiction, the matter still may, and must, be submitted for his examination.[11] Accordingly, we address whether such a colorable basis arises here.

We confront an appeal from a new trial order, granted by the superior court on grounds the jury should have been instructed on the requirements of the Talent Agencies Act. The trial court thus necessarily determined that, contrary to its prior assumption under which the trial was conducted, Stevens has at least a colorable defense based on matters governed by the Act.

The court's implicit conclusion is entitled to great deference on review of its order granting a new trial. (E.g., *Jiminez v. Sears, Roebuck & Co.* (1971) 4 Cal.3d 379, 387 [93 Cal.Rptr. 769, 482 P.2d 681, 52 A.L.R.3d 92].) Indeed, "[s]o long as a reasonable or even fairly debatable justification under the law is shown for the order granting the new trial, [it] will not be set aside. [Citations.]" (*Ibid.*)

That standard is met here. Without dispute, Styne seeks a share of revenues derived from an arrangement involving entertainer Stevens and

---

[11]At oral argument, Styne's counsel suggested Stevens waived her defense under the Act by failing, pretrial, to seek a superior court stay pending a referral to the Commissioner, and by instead resisting any such referral, thus causing the matter to proceed to trial. As we have explained, Stevens's contention that mere defenses under the Act need not be referred to the Commissioner is wrong. Moreover, as Styne suggests, the preferable procedure is for the party asserting the Act to seek a pretrial stay and referral. Still, and putting aside whether Stevens's illegality defense could be waived at all, we conclude no waiver arose under the particular circumstances of this case. As indicated in the text, Stevens first raised the defense by a motion for summary judgment in the superior court. Styne opposed the motion on two grounds, among others; first, that the defense lacked merit, and second, that if it had potential merit, *it should be referred to the Commissioner*. In denying the motion, the superior court ruled that *all* the points set forth in Styne's opposition were valid, and specifically determined that Stevens's Act-based defense was unmeritorious as a matter of law. Subsumed in this ruling was the premise that *no reference to the Commissioner was necessary, and none would occur*. Later, the court denied Stevens's renewed attempt, through a requested instruction, to inject the Act into the case, and the matter thus proceeded to trial as though the Act was not involved. Only after trial, in response to Stevens's new trial motion, did the court conclude it had taken an erroneous view of the Act's relevance.

Thus, any specific effort by Stevens to refer the matter pretrial would have been futile. Styne would have opposed referral on grounds the Act did not apply, and the superior court would have agreed. We note further that until the Court of Appeal so held in this case, no appellate court decision had specifically deemed it necessary to refer Act-based defenses to the Commissioner. We granted review to resolve that unsettled issue. Stevens's contrary position was thus not so unreasonable or implausible as to give rise to a waiver of her Act-based defense.

HSN, a cable television network, which required Stevens to make on-camera use of her professional talents, personality, image, and status. On appeal, Styne admits he initiated contact with HSN on Stevens's behalf, promoted her skills and image, and tried to interest the network in using her as a celebrity spokesperson for products sold on the air. Styne further acknowledges he set up and attended a key meeting between Stevens and HSN that led to the final deal between those parties, and that he maintained contact with HSN executives to "protect Stevens'[s] interests *vis-à-vis* HSN" as the deal developed. Finally, Styne appears to concede that any promise Stevens made to provide him a share of the revenues from this venture was as compensation for his help in securing the deal.[12]

Styne argues about the *meaning* of these facts under the Talent Agencies Act. He has contended throughout that there is no issue of unlicensed talent agency services because, in the final analysis, his efforts did not produce, and his monetary claims do not arise from, the procurement of "employment" for an "artist." (§ 1700.4, subd. (a).) In this regard, he stresses that Stevens was not directly paid for her television appearances, but went on camera to promote her own company's products.[13] In Styne's view, therefore, the most he did was to broker a business deal for the sale of cosmetics by Stevens's company to HSN, and he seeks only his promised share of *profits* derived from that commercial venture.

But this is precisely the sort of issue that the Talent Agencies Act commits in the first instance to the exclusive jurisdiction and special competence of the Commissioner. Here, the Commissioner was never given the opportunity to resolve Stevens's colorable claim that the contract alleged by Styne is void under the Act. He should now be allowed to do so.

Accordingly, the Court of Appeal's judgment, overturning the new trial order and reinstating the trial verdict, must be reversed. We will instruct the Court of Appeal to reinstate the new trial order, and to direct the superior court not to go forward immediately with a retrial, but instead to stay its

---

[12]We note that although the Court of Appeal specifically declined to reach the issue whether Styne's activities violated the Talent Agencies Act, it observed that "[t]he evidence, although far from conclusive, included testimony tending to show that Styne was actively engaged in promoting Stevens's employment opportunities" pursuant to a contract with Stevens.

[13]Of course, the Act is concerned with contracts to procure either "employment" or "engagements" for artists. (§ 1700.4, subd. (a).) Hence, its coverage is not necessarily confined to instances where the artist receives direct payment for his or her professional efforts.

proceedings pending first submission to the Commissioner of the issues arising under the Talent Agencies Act.[14]

## CONCLUSION

The judgment of the Court of Appeal is reversed. The Court of Appeal is instructed to reinstate the order for new trial, and to direct the superior court to stay further new trial proceedings in that court pending submission to the Commissioner of issues arising under the Talent Agencies Act, as set forth in this opinion.

George, C. J., Kennard, J., Werdegar, J., Chin, J., and Brown, J., concurred.

---

[14]Subject to any valid objections, the Commissioner may be able to make evidentiary use of the transcripts of the superior court trial. Any appeal de novo from the Commissioner's decision (see § 1700.44, subd. (a)) may, of course, be consolidated with the pending superior court contract action.