In the

# United States Court of Appeals

### For the Seventh Circuit

_____

No. 14-3231

CONSUMER HEALTH INFORMATION
CORPORATION,

*Plaintiff-Appellant*,

*v.*

AMYLIN PHARMACEUTICALS, INC., *et al.*,

*Defendants-Appellees*.

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:13-cv-01061-TWP-DML — **Tanya Walton Pratt**, *Judge*.

_____

ARGUED MAY 28, 2015 — DECIDED APRIL 15, 2016

_____

Before FLAUM, KANNE, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Consumer Health Information Cor-
poration sued Amylin Pharmaceuticals, Inc., alleging copy-
right infringement. 17 U.S.C. §§ 101 *et seq.* The dispute
centers on copyright *ownership*: Who owns the copyright in
certain patient-education materials Consumer Health devel-
oped for Amylin's use in marketing its diabetes drug Byetta?
The parties' contract, executed in March 2006, unambiguous-

ly assigns the copyright to Amylin. This suit is an attempt to reclaim ownership of the copyright and recover damages for infringement. To that end, Consumer Health alleges that the contract was induced by fraud or economic distress and seeks rescission. The district court dismissed the suit as untimely.

We affirm. Consumer Health assigned the copyright to Amylin in 2006 but did not file this suit until July 2013, several years too late under either of two applicable statutes of limitations. A four-year limitations period applies to claims for contract rescission under California law, which governs the parties' contract. CAL. CIV. PROC. CODE § 337. Claims under the Copyright Act are subject to a three-year statute of limitations. 17 U.S.C. § 507(b). Consumer Health's cause of action accrued in March 2006, when the contract was executed; at that point Consumer Health knew that Amylin owned the copyright, and the limitations clock on a suit to reclaim ownership started ticking. Under either statute of limitations, the suit is untimely.

## I. Background

Consumer Health is headquartered in Virginia and promotes itself as having "expertise in patient engagement and patient adherence strategies, health literacy, and patient education program development for prescription drugs, over-the-counter products, and medical devices." Amylin, a large pharmaceutical company, is based in California. Jointly with Eli Lilly & Co., a pharmaceutical giant based in Indiana, Amylin developed and owns the rights to Byetta, an injectable diabetes drug.

When Byetta launched in 2005, its initial sales were disappointing. Amylin attributed the slow start to patients not understanding how to properly use the drug and thus declining to refill their prescriptions. An additional problem was that doctors were not adequately trained to demonstrate the use of Byetta to their patients and so were reluctant to prescribe it as often as Amylin had projected. So Amylin approached Consumer Health to develop materials that would increase patient education and compliance.

Consumer Health commenced work on the project in December 2005 on the verbal assurance that it would be paid for its services. In March 2006 the parties formalized their arrangement by executing a Master Services Agreement. The contract explicitly assigned *to Amylin* the copyright in any materials Consumer Health created:

> [Consumer Health] hereby assigns to AMYLIN all right, title, and interest in and to said copyrights in the United States and elsewhere, including registration and publication rights, rights to create derivative works and all other rights which are incident to copyright ownership.

Amylin stopped paying for work after September 30, 2006, but continued to use the materials Consumer Health had developed, or at least certain "constituent elements" of them.

Almost seven years later, in July 2013, Consumer Health sued Amylin and Eli Lilly alleging copyright infringement.[1]

---

[1] For the rest of this opinion, we'll refer to the defendants collectively as "Amylin."

The complaint, filed in the Southern District of Indiana, seeks actual damages and disgorgement of profits attributable to the infringement. The premise of the suit is that Consumer Health owns the copyright in the educational materials because the contract was induced by fraud or economic duress, either of which is a basis for rescission. More specifically, the complaint alleges that Amylin never intended to fulfill its end of the bargain and that Consumer Health signed the contract under economic duress. The factual premise of the latter contention is that Consumer Health had not yet been paid for its work from December 2005 to March 2006, when it signed the contract, and therefore agreed to the contract only under economic duress.[2]

Amylin moved to dismiss the suit as untimely. The district court granted the motion, concluding that the complaint was filed several years too late under either of two applicable statutes of limitations. Under the contract's choice-of-law provision, the rescission claim is governed by California law, and the California limitations period for rescission claims based on fraud or economic duress is four years. CAL. CIV. PROC. CODE § 337. The judge held that Consumer Health's rescission claim accrued in March 2006, when the contract was signed, or at the very latest in October 2006, when Amylin stopped paying for its services. On this accrual analysis, the four-year limitations period expired in either

---

[2] This suit was preceded by an earlier one making essentially the same claims. In December 2008 Consumer Health sued Amylin and Eli Lilly in the United States District Court for the District of Columbia alleging (among other things) copyright infringement, fraud, and breach of contract. For reasons not revealed in the record, Consumer Health voluntarily dismissed that case.

March or October 2010, roughly three years before the suit was filed.

To avoid the time bar, Consumer Health invoked the principle that the statute of limitations does not bar contract *defenses* and insisted that it was asserting fraud and duress defensively, to block enforcement of the contract. The judge rejected this argument, holding that Consumer Health was using rescission *offensively* in a suit to recover damages for copyright infringement.

Alternatively, the judge held that the suit was untimely under the Copyright Act's three-year statute of limitations. 17 U.S.C. § 507(b). Because the copyright claim was essentially a dispute over copyright *ownership*, the judge determined that the claim accrued in March 2006 when the parties signed the contract clearly giving Amylin "all right, title, and interest in and to" the copyright to the educational materials Consumer Health had and would develop. On this accrual analysis, any suit seeking to reclaim copyright ownership had to be filed by March 2009.

To avoid *this* time bar, Consumer Health urged the court to apply the separate-accrual rule, which holds that each infringing use of copyrighted material triggers a new three-year limitations period. *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1969 (2014). The judge rejected this argument, distinguishing between ordinary infringement cases and cases disputing copyright *ownership*. Following the Ninth Circuit's decision in *Seven Arts Filmed Entertainment, Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251 (9th Cir. 2013), the judge held that in the latter category, the cause of action accrues when the ownership dispute becomes explicit. Because this ownership dispute was obvious in March 2006

when the parties executed the Master Services Agreement, the suit was more than four years too late.

## II. Discussion

The judge dismissed Consumer Health's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, so our review is de novo. *Thulin v. Shopko Stores Operating Co.*, 771 F.3d 994, 997 (7th Cir. 2014). Consumer Health attacks the judge's rulings under both the four-year statute of limitations for contract rescission *and* the Copyright Act's three-year limitations period. Both rulings were sound, and either one independently justifies dismissal, but we'll begin with the rescission statute of limitations. If Consumer Health cannot successfully avoid the contractual assignment by rescinding the Master Services Agreement, its claim under the Copyright Act is doomed.

### A. California's Statute of Limitations for Rescission

As we've noted, unless the claim for rescission can go forward, Consumer Health cannot hope to satisfy the first and necessary element of a claim for copyright infringement: ownership of a valid copyright. *See Feist Publ'ns., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). Consumer Health alleges that it was induced to enter into the Master Services Agreement by fraud or economic duress, giving it the option to rescind.

The merits of this rescission argument are not before us; we have only the question of timeliness. The parties' contract specifies that California law controls. California has enacted a four-year statute of limitations for claims of contract rescission based on allegations that the contract was induced by fraud or economic duress. CAL. CIV. PROC. CODE § 337.

The judge held that Consumer Health's rescission claim accrued in March 2006, when the contract was signed, or at the latest in October 2006, when Consumer Health would have known the factual basis for rescission.

Consumer Health doesn't quarrel with this part of the judge's analysis. Instead, it seeks refuge in the general principle that statutes of limitations do not apply to contract *defenses*. *See Styne v. Stevens*, 26 P.3d 343, 350 (Cal. 2001) ("Under well-established authority, a defense may be raised at any time, even if the matter alleged would be barred by a statute of limitations if asserted as the basis for affirmative relief."). Consumer Health characterizes its fraud and economic-duress allegations as *defensive* claims, asserted as a means to avoid enforcement of the Master Services Agreement.

This argument both misunderstands the legal rule and mischaracterizes Consumer Health's own litigating position. The Supreme Court of California describes the legal rule this way: "One [who is] sued on a contract may urge defenses that render the contract unenforceable, even if the same matters, alleged as grounds for restitution after rescission, would be untimely." *Id*. More generally, "whether affirmative defenses are exempt from statutes of limitations largely hinges on a realistic assessment of the parties' litigation posture." *City of St. Paul v. Evans*, 344 F.3d 1029, 1035 (9th Cir. 2003) (applying an identical rule from another state).

To state the obvious here, Amylin didn't sue Consumer Health to enforce the contract. Consumer Health sued Amylin asking for rescission as a necessary predicate to a claim of copyright ownership and recovery of damages for infringement. In short, Consumer Health is asserting fraud

and economic duress *offensively*, not *defensively*, and as such cannot avoid the statute of limitations. The suit is untimely under California's four-year statute of limitations for rescission claims.

**B. The Copyright Act Statute of Limitations**

Consumer Health also argues that its infringement claim is timely under the Copyright Act's three-year limitations period if the separate-accrual rule is applied. Under that rule each alleged act of infringement "gives rise to a discrete 'claim' that 'accrue[s]' at the time the wrong occurs." *Petrella*, 134 S. Ct. at 1969. Because "each infringing act starts a new limitations period," any infringing act within the three-year look-back period from the date of the complaint can form the basis of an infringement claim. *Id.* at 1969, 1975.

Consumer Health cannot benefit from the separate-accrual rule, which applies to ordinary infringement suits, not suits in which the central dispute is copyright *ownership*. As the Ninth Circuit has explained, copyright claims premised on disputes about ownership accrue "'when plain and express repudiation of co-ownership is communicated to the claimant, and are barred three years from the time of repudiation.'" *Seven Arts*, 733 F.3d at 1254 (quoting *Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir. 1996)).

Other circuits recognize the same distinction between ordinary infringement suits and suits in which the core dispute is about copyright *ownership*. The Second, Sixth, and Tenth Circuits have held that when the gravamen of a copyright suit is a contest over copyright ownership, the claim accrues when the claimant has express notice of a competing claim of ownership. *See Stan Lee Media, Inc. v. Walt Disney Co.*,

774 F.3d 1292, 1300 n.4 (10th Cir. 2014); *Kwan v. Schlein*, 634 F.3d 224, 229 (2d Cir. 2011); *Ritchie v. Williams*, 395 F.3d 283, 288 n.5 (6th Cir. 2005).

This distinction makes sense for purposes of claim-accrual analysis. "In the ordinary infringement case, ownership is not in dispute … ." *Seven Arts*, 733 F.3d at 1254. Instead, the focus is on the infringing acts—the nature and scope of the unauthorized work—and any defenses to liability (i.e., "fair use"). *Id.* But disputes about copyright ownership are different. Unlike an ordinary infringement case in which each infringing act is a discrete wrong triggering a new limitations period, ownership claims "accrue only once," when the claimant receives notice that his ownership has been expressly repudiated or contested. *Id.*; *see also Kwan*, 634 F.3d at 228 ("An ownership action accrues only once, when 'a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right.'" (quoting *Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir. 1992))).

Consumer Health acknowledges this line of cases but argues that the Supreme Court's decision in *Petrella* has unsettled the distinction between ordinary infringement claims and disputes about copyright ownership. We disagree. *Petrella* did not involve an issue of copyright ownership. 134 S. Ct. at 1971 ("Petrella is now sole owner of the copyright in that work."). The Court had no reason to—and did not—address whether the separate-accrual rule applies to disputes about copyright ownership. Indeed, the Court made no mention *at all* of the Second, Sixth, or Ninth Circuit cases we've cited. And the Tenth Circuit's decision in *Stan Lee Media*—adopting the approach of the Second, Sixth, and Ninth Circuits—was issued *after* the Supreme Court's deci-

sion in *Petrella*. 774 F.3d at 1300 n.4 (relying on *Seven Arts*, *Kwan*, and *Ritchie*). Accordingly, *Petrella* has not displaced the consensus view of our sister circuits that disputes about copyright *ownership* accrue only once.

Finally, Consumer Health seeks support from *Chicago Building Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610 (7th Cir. 2014); *Kling v. Hallmark Cards Inc.*, 225 F.3d 1030 (9th Cir. 2000); and *Taylor v. Meirick*, 712 F.2d 1112 (7th Cir. 1983). Reliance on these decisions is misplaced. *Taylor* involved a garden-variety infringement action; copyright ownership was not in dispute. 712 F.2d at 1117 ("The validity of [the plaintiff's] copyrights is conceded … ."). Similarly, *Chicago Building Design* did not address the distinction between ordinary infringement cases and disputes about copyright ownership; the decision straightforwardly applied the separate-accrual rule in an infringement-focused case. 770 F.3d at 616. The question in *Kling* was whether a copyright owner must sue for a declaration of ownership prior to any infringing conduct. 225 F.3d at 1037. And *Kling* cannot unsettle the Ninth Circuit's decision in *Seven Arts*, which came later and specifically addressed the accrual rule for disputes over copyright ownership.

We're persuaded by the unanimous line of cases from our sister circuits and now hold that when the gravamen of a copyright suit is a question of copyright ownership, the claim accrues when the ownership dispute becomes explicit—that is, when the claimant has notice that his claim of ownership is repudiated or contested. Applying this accrual rule here, Consumer Health knew when it signed the Master Services Agreement in March 2006 that Amylin owned the copyright via express assignment. Consumer Health's suit to

reclaim copyright ownership—filed in July 2013—was more than four years too late.

AFFIRMED.