[No. B124598. Second Dist., Div. Two. May 11, 1999.]

DAVE PARK, Plaintiff and Appellant, v.
DEFTONES et al., Defendants and Respondents.

## COUNSEL

Johnson & Rishwain and Neville L. Johnson for Plaintiff and Appellant.

Browne & Woods, Allen B. Grodsky and James D. Kozmor for Defendants and Respondents the Deftones, Camillo Wong Moreno, Stephen Carpenter, Abe Cunningham and Chi Ling Cheng.

Greenberg, Glusker, Fields, Claman & Machtinger, Lawrence Y. Iser and Matthew N. Falley for Defendants and Respondents Maverick Records and Guy Oseary.

## OPINION

**NOTT, Acting P. J.**—Dave Park appeals from the summary judgment entered against him in his action for breach of contract and intentional interference with contractual relations. His action arises from the termination of his personal manager contract by the Deftones, a music act whose members are Camillo Wong Moreno, Stephen Carpenter, Abe Cunningham, and Chi Ling Cheng (referred to collectively as the Deftones), without paying him commissions which he asserts are due him. In addition, Park alleges that after he secured a recording contract for the Deftones with Maverick Records (Maverick), the record company and one of its agents, Guy Oseary, purposefully interfered with Park's contractual relationship with the Deftones. The trial court granted summary judgment on the ground that the management contract between the Deftones and Park was void, Park

having violated the Talent Agencies Act (the Act) by securing performance engagements for the Deftones without being licensed as a talent agency. (Lab. Code, § 1700 et seq.)[1] We affirm on that ground.

## PROCEDURAL AND FACTUAL BACKGROUND

Park filed this action in October 1996, alleging breach of certain management agreements against the Deftones and the individual band members and intentional interference with contractual relations against Maverick and Oseary. He attached to his complaint his written agreements with the Deftones entered into in February 1992, February 1993, and January 1994. In February 1997, the Deftones filed a petition before the Labor Commissioner, seeking to void the management agreements. Park unsuccessfully sought dismissal of the petition as untimely filed. The Labor Commissioner determined that Park had violated the Act by obtaining performance engagements for the Deftones on 84 occasions without a license. He issued an order stating that the personal management agreements entered into in 1992, 1993, and 1994 were "null, void and unenforceable." Park demanded a trial de novo in the administrative proceeding.

Maverick and Oseary filed a motion for summary judgment on the grounds that the undisputed facts showed that (1) Park and the Deftones entered into a written contract for management services dated January 18, 1994, (2) between September 1991 and September 1994, Park procured numerous performances for the Deftones, and (3) Park was not a licensed talent agency during that period. Maverick and Oseary relied in part upon the transcript of the Labor Commission proceeding to establish the facts. The Deftones filed a similar motion.

Park opposed the motions. He objected to use of the Labor Commission hearing transcript, but admitted that he had obtained more than 80 engagements for the Deftones. He asserted that the Deftones' petition before the Labor Commission was untimely filed and that his services did not require a talent agency license because they were rendered without a commission and were undertaken in order to obtain a recording agreement. The trial court entered summary judgment in favor of all defendants.

## DISCUSSION

### I. *Timeliness*

Park contends that the Deftones' petition before the Labor Commissioner and the defense based upon the Act are barred by the one-year statute

---

[1]All statutory references are to the Labor Code, unless otherwise indicated.

of limitations: "No action or proceeding shall be brought pursuant to this chapter with respect to any violation which is alleged to have occurred more than one year prior to commencement of the action or proceeding." (§ 1700.44, subd. (c).)

In declaration testimony, Park stated that the last time he booked a concert for the Deftones was in August 1994. He urges that the Deftones' petition, filed in February 1997, was therefore not timely. Park concludes that the Deftones may not rely upon the Act as a defense because Park's own action was filed more than one year after he last booked a concert for the Deftones.

The Labor Commissioner, who is statutorily charged with enforcing the Act (§ 1700.44, subd. (a)), found that the Deftones' petition was timely because it was brought within one year of Park's filing an action to collect commissions under the challenged contract.[2] The Commissioner stated that the attempt to collect commissions allegedly due under the agreements was itself a violation of the Act. (*Moreno* v. *Park* (Jan. 20, 1998, Lab. Comr.) No. 9-97, p. 4.)

■ In construing a statute, the court gives considerable weight to the interpretation placed on the statute by the administrative agency charged with enforcing it. (*Robinson* v. *Fair Employment & Housing Com.* (1992) 2 Cal.4th 226, 234 [5 Cal.Rptr.2d 782, 825 P.2d 767].) ■ The Labor Commissioner's interpretation avoids the encouragement of preemptive proceedings before it. It also assures that the party who has engaged in illegal activity may not avoid its consequences through the timing of his own collection action. We conclude that the Labor Commissioner's interpretation is reasonable, and that the Deftones' petition was timely filed.

## II. *Incidental procurement of employment*

The Act provides that "No person shall engage in or carry on the occupation of a talent agency without first procuring a license therefor from the Labor Commissioner." (§ 1700.5.) A talent agency is "a person or corporation who engages in the occupation of procuring, offering, promising, or attempting to procure employment or engagements for an artist or artists, except that the activities of procuring, offering, or promising to procure recording contracts for an artist or artists shall not of itself subject a person or corporation to regulation and licensing under this chapter. . . ." (§ 1700.4, subd. (a).)

■ Unlike talent agents, personal managers are not covered by the Act. Personal managers primarily advise, counsel, direct, and coordinate the

---

[2]The commissions sought were apparently for procuring a recording agreement, not procuring engagements.

development of the artist's career. They advise in both business and personal matters, frequently lend money to young artists, and serve as spokespersons for the artists. (See *Waisbren* v. *Peppercorn Productions, Inc.* (1995) 41 Cal.App.4th 246, 252-253 [48 Cal.Rptr.2d 437] (*Waisbren*).)

Park argues that as a personal manager his goal in procuring engagements for the Deftones was to obtain a recording agreement. He contends that his actions were therefore exempt from regulation. That position was rejected in *Waisbren, supra,* 41 Cal.App.4th at page 259. In *Waisbren*, a promoter brought an action for breach of contract against a company engaged in designing and creating puppets. The defendant moved for summary judgment on the ground the parties' agreement for the plaintiff's services was void because he had performed the duties of a talent agent without obtaining a license. The plaintiff asserted that a license was unnecessary because his procurement activities were minimal and incidental. He had also assisted in project development, managed certain business affairs, supervised client relations and publicity, performed casting duties, coordinated production, and handled office functions. In return, he was to receive 15 percent of the company's profits. *Waisbren* holds that even incidental activity in procuring employment for an artist is subject to regulation under the Act.

The reasoning of *Waisbren* is convincing. It relies upon the remedial purpose of the Act and the statutory goal of protecting artists from long recognized abuses. The decision is also based upon the Labor Commissioner's long-held position that a license is required for incidental procurement activities. The court in *Waisbren* found the Labor Commissioner's position to be supported by legislative history and, in particular, by the recommendations contained in the Report of the California Entertainment Commission, which were adopted by the Legislature in amending the Act in 1986.

*Wachs* v. *Curry* (1993) 13 Cal.App.4th 616 [16 Cal.Rptr.2d 496], relied upon by Park, does not further his cause. In *Wachs*, the personal manager plaintiffs brought a declaratory relief action challenging the constitutionality of the Act on its face. They took the position that the Act's exemption for procurement activities involving recording contracts violated the equal protection clause and that the Act's use of the term "procure" was so vague as to violate due process. *Wachs* rejected both of those positions. It also interpreted the Act, which applies to persons engaged in the occupation of procuring employment for artists, as applying only where a person's procurement activities constitute a significant part of his business. (*Id.* at pp. 627-628.) The court did not define "significant part." The court acknowledged that ". . . the only question before us is whether the word

'procure' in the context of the Act is so lacking in objective content that it provides no standard at all by which to measure an agent's conduct" (*id.* at p. 628, italics omitted). We agree with *Waisbren* that the interpretation stated in *Wachs* is dictum and that even incidental procurement is regulated.

## III. *Absence of a commission*

Park also contends that his procuring employment for the Deftones is not regulated by the Act because he was not compensated for that work. We disagree.

Park's 1993 and 1994 agreements with the Deftones expressly provided that Park was to receive a 20 percent commission on all income earned from employment that Park secured. Although Park stated in declaration testimony that he received no commission for procuring engagements for the Deftones, the contracts appear to provide for compensation.[3] In addition, Park would receive compensation for his services ultimately from commissions for obtaining a recording contract for the Deftones. Thus, it is not clear that Park should be treated as one who was not compensated for his services.

Park's position, moreover, is not supported by the language of the Act. The Act regulates those who engage in the occupation of procuring engagements for artists. (§ 1700.4, subd. (a).) The Act does not expressly include or exempt procurement where no compensation is made. *Waisbren* states at footnote 6: "By using [the term 'occupation'], the Legislature intended to cover those who are compensated for their procurement efforts." (41 Cal.App.4th at p. 254, fn. 6.) The issue of compensation, however, was not before the court in *Waisbren*. The language in footnote 6 is dictum which we conclude is not supported by the purpose and legislative history of the Act. One may engage in an occupation which includes procuring engagements without receiving direct compensation for that activity.

As explained in *Waisbren*, the purpose of the Act is remedial, and its aim goes beyond regulating the amount of fees which can be charged for booking acts. For example, an agent must have his form of contract approved by the Labor Commissioner, maintain his client's funds in a trust fund account, record and retain certain information about his client, and refrain from giving false information to an artist concerning potential employment. (See §§ 1700.23, 1700.25, 1700.26, 1700.32, and 1700.41.) ▮ Because the Act is remedial, it should be liberally construed to promote its general object. (See *Buchwald* v. *Superior Court* (1967) 254 Cal.App.2d 347, 354

---

[3]The agreements acknowledge that Park is not a licensed talent agent and is under no obligation to procure employment for the Deftones.

[62 Cal.Rptr. 364].) The abuses at which these requirements are aimed apply equally where the personal manager procures work for the artist without a commission, but rather for the deferred benefits from obtaining a recording contract.

In 1982, the Legislature created the California Entertainment Commission (the Commission) to study the laws and practices of this and other states relating to the licensing of agents and representatives of artists in the entertainment industry in order to recommend to the Legislature a model bill regarding licensing. (See *Waisbren, supra*, 41 Cal.App.4th at p. 256.) In 1985, the Commission submitted its report to the Governor and the Legislature (the Report). The Legislature followed the Commission's recommendations in enacting the 1986 amendments to the Act. (See *Waisbren, supra*, 41 Cal.App.4th at p. 258.)

The Report[4] states that the Commission reviewed and rejected a proposal which would have exempted from the Act anyone who does not charge a fee or commission for procuring employment for an artist. The Commission concluded: "It is the majority view of the Commission that personal managers or anyone not licensed as a talent agent should not, under any condition or circumstances, be allowed to procure employment for an artist without being licensed as a talent agent, except in accordance with the present provisions of the Act." (Rep., *supra*, at p. 6.)

The Legislature accepted the Report and codified the Commission's recommendations, approving the Commission's view that no exemption should be created for those who do not charge a fee for procuring employment for an artist. We conclude that the Act requires a license to engage in procurement activities even if no commission is received for the service.

DISPOSITION

The judgment appealed from is affirmed.

Zebrowski, J. and Mallano, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied July 28, 1999.

---

[4]We grant respondents' request that we take judicial notice of the Report. (Evid. Code, § 452, subd. (c).)

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.