92 Cal.Rptr.2d 655 (2000)
78 Cal.App.4th 17
Norton STYNE, Plaintiff and Appellant,
v.
Connie STEVENS et al., Defendants and Respondents.
No. B121208.
Court of Appeal, Second District, Division Two.
February 8, 2000.
Review Granted June 2, 2000.
*657 Bronson, Bronson & McKinnon and Barry B. Langberg, for Plaintiff and Appellant.
Rosoff, Schiffres & Barta, Howard L. Rosoff; Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, Patricia L. Glaser and Elizabeth G. Chilton, Los Angeles, for Defendants and Respondents.
Certified for Partial Publication.[*]
*656 NOTT, J.
This case presents two main issues. The first is whether a trial court has jurisdiction to determine in the first instance whether the activities of a personal manager of a celebrity are encompassed within the Talent Agencies Act (Lab.Code, § 1700 et seq.).[1] The second is whether the celebrity's failure to submit the question to the Labor Commissioner in a timely manner precludes her defense on this ground.
Norton Styne appeals from an order for new trial entered after a jury rendered a verdict in Styne's favor in the amount of $4,330,370. The verdict was against defendants Connie Stevens, Connie Stevens Forever Springthe Beauty System, Inc., and Connie Stevens Forever Spring II the Beauty System, Inc. (sometimes referred to collectively as Stevens), in Styne's action for breach of an oral contract by the terms of which Styne was to receive 10 percent of the profits of Stevens's cosmetics business. The trial court ordered a new trial on the ground that it had prejudicially erred in failing to instruct the jury on the requirements of the Act.
We hold that the Labor Commissioner has original jurisdiction to determine the legality of an agreement under the Act. Stevens's failure to refer the issue to the Labor Commissioner in a timely manner precludes her raising the issue in the trial court. The court therefore erred in granting a new trial on the ground that it had failed to instruct the jury on the requirements of the Act.

FACTUAL AND PROCEDURAL HISTORY
Styne filed this action in January 1996. The complaint, which is captioned breach of contract, breach of fiduciary duty, accounting, breach of express trust, imposition of constructive trust, constructive fraud, and declaratory relief, alleges the following. Styne was the long-time personal manager of Stevens, and devoted his professional efforts toward developing an electronic retail product sales business that would feature Stevens as a celebrity spokesperson selling her own line of beauty products. Stevens agreed that as a result of Styne's efforts, he was entitled to 10 percent of the profits arising from the business. In addition, Stevens agreed to defer payment of a portion of the amounts due to Styne and hold that money in trust for Styne.
Stevens did not allege violation of the Act in her answer, filed April 25, 1996. In July 1997, Stevens moved for summary judgment on the ground that the alleged contract between Styne and Stevens violates the Act and is therefore void.
Stevens asserted in her motion for summary judgment that if she agreed to pay Styne 10 percent of the profits of her cosmetics business in return for his efforts in setting up a deal with Home Shopping Network (HSN), as Styne alleged, then the *658 agreement was void in that Styne was not licensed under the Act. Stevens pointed out that Styne, her personal manager, took credit for promoting her interests to HSN on numerous occasions, arranging a key meeting with top HSN personnel, and actively helping to procure Stevens's deal with' HSN. That deal, according to Stevens, involved HSN buying Stevens's beauty products on the condition that she would appear on the network's programs promoting the products. Stevens took the position that the arrangement amounted to employment in an entertainment enterprise.
Styne denied that his agreement with Stevens was based upon his efforts as either her personal manager or as a talent agent. He asserted that he was instrumental in setting up Stevens's agreement to sell her cosmetics line to HSN, but that the agreement was for the sale of products and thus outside the realm of entertainment and of the Act. Styne also pointed out in his opposition to Stevens's summary judgment motion that the issue of the validity of the agreement under the Act was for the Labor Commissioner in the first instance. The trial court denied the motion.
The case came on for trial in January 1998. Prior to evidence being taken, Stevens proposed a jury instruction which would require the jury to determine whether Styne had violated the Act. The court refused the instruction.
The evidence at trial touched on the matters which Stevens had raised in her summary judgment motion. Ironically, the same evidence which tended to support Stevens's position that Styne was engaged in the occupation of procuring, offering, promising, or attempting to procure employment or engagements for Stevens (§ 1700.4, subd. (a)) also tended to support the existence of an oral agreement between Stevens and Styne.
The evidence, although far from conclusive, included testimony tending to show that Styne was actively engaged in promoting Stevens's employment opportunities. Stevens was a successful singer and actress. She had appeared in films and concerts, and on television. In recent years, however, her services were less in demand, and she was facing financial hardship. Styne took steps toward obtaining employment for Stevens as a spokesperson for products, recording albums,[2] and appearing in concert engagements through HSN. Styne spoke to HSN entertainment chief Kenneth Yates on numerous occasions about Stevens, and sent a letter to him in which Styne promoted Stevens's outstanding communication skills and her wholesome and appealing public image. He set up a meeting so that Stevens could meet with top HSN executives to cement a deal. Styne attended the meeting and pushed for concerts and albums featuring Stevens. He initiated numerous other meetings to promote Stevens's interests with HSN, and prepared detailed budget proposals and profit projections. Styne took credit for bringing about the HSN deal.
The ultimate deal struck between Stevens and HSN involved no direct payment for appearances, but rather the sales of Stevens's own cosmetics products. Stevens promoted her product line on the network. She supplied her products to HSN, which purchased them from Stevens and sold them to consumers.
The jury found in favor of Styne, and Stevens moved for judgment notwithstanding the verdict and for new trial. The trial court granted the new trial motion on the ground that it had prejudicially erred in failing to instruct the jury on the requirements of the Act and denied the motion for judgment notwithstanding the verdict.

*659 DISCUSSION

1. Scope of the Act

The Act provides that "[n]o person shall engage in or carry on the occupation of a talent agency without first procuring a license therefor from the Labor Commissioner." (§ 1700.5.) A talent agency is "a person or corporation who engages in the occupation of procuring, offering, promising, or attempting to procure employment or engagements for an artist or artists." (§ 1700.4, subd. (a).) "Artists" means "actors and actresses rendering services on the legitimate stage and in the production of motion pictures, radio artists, musical artists, musical organizations, directors of legitimate stage, motion picture and radio productions, musical directors, writers, cinematographers, composers, lyricists, arrangers, models, and other artists and persons rendering professional services in motion picture, theatrical, radio, television and other entertainment enterprises." (§ 1700.4, subd. (b).) The purpose of the Act is to protect artists seeking employment against abuses by talent agents. (Buchwald v. Superior Court (1967) 254 Cal.App.2d 347, 350-351, 62 Cal.Rptr. 364 (Buchwald).)
A personal manager is not covered by the Act or other statutory licensing scheme. (Waisbren v. Peppercorn Productions, Inc. (1995) 41 Cal.App.4th 246, 252, 48 Cal.Rptr.2d 437.) The primary function of the personal manager is to advise, counsel, direct, and coordinate in the development of the artist's career. (Ibid.) The manager's task encompasses attending to the artist's finances and organizing the economic elements of the artist's personal and creative life in order to enable the client to produce the creative product. (Ibid.) Even incidental or occasional procurement of employment, however, subjects a party to the Act's licensing scheme. (Id. at p. 261, 48 Cal.Rptr.2d 437; but see Wachs v. Curry (1993) 13 Cal. App.4th 616, 628, 16 Cal.Rptr.2d 496 [employment procurement must be a significant part of the agent's business as a whole, in order to subject him to the Act's licensing requirement].) If the party procuring employment is unlicensed, his agreement with the artist is illegal and void. (Waisbren v. Peppercorn Productions, Inc., supra, at p. 262, 48 Cal.Rptr.2d 437.)
The evidence, partially recounted above, presents numerous issues, factual and legal, which must be resolved in the present case in order to determine whether a violation of the Act has occurred. They include not only the extent of Styne's services on Stevens's behalf, but also whether those types of services are covered by the Act. In addition, the evidence raises issues concerning whether Stevens's involvement was that of an artist, as that term is defined in the Act. That is, whether one who is paid to supply her product to a shopping network and who promotes the product on the same network is performing in the role of an artist. The issue is apparently one of first impression.
This case illustrates the value of the administrative proceeding. Both the underlying facts and the proper application of the Act were strongly contested. Under the statutory scheme, the Labor Commissioner, a forum familiar with entertainment enterprises, should have had an opportunity to determine the issues in the first instance. In bypassing the administrative remedy, the parties deprive the court of the Labor Commissioner's expertise in this area as well as a fuller development of the underlying facts. While review of the administrative proceeding is de novo (§ 1700.44, subd. (a)), the proceeding is nevertheless an important step, especially where the case raises novel issues.
We do not reach the issue of whether the parties' agreements violated the Act. Even assuming they did, the issues were for the Labor Commissioner.

2. Jurisdiction to determine the validity of talent agent-artist contracts

Section 1700.44, subdivision (a) provides: "In cases of controversy arising under this *660 chapter, the parties involved shall refer the matter in dispute to the Labor Commissioner, who shall hear and determine the same, subject to an appeal within 10 days after determination, to the superior court where the same shall be heard de novo."
"The Talent Agencies Act (§§ 1700-1700.47) is a remedial statute designed to protect those seeking employment. [Citation.] The Commissioner has the authority to hear and determine various disputes, including the validity of artists' manager-artist contracts and the liability of the parties thereunder. [Citation.] The reference of disputes involving the act to the Commissioner is mandatory. [Citation.] Disputes must be heard by the Commissioner, and all remedies before the Commissioner must be exhausted before the parties can proceed to the superior court. [Citation.]" (REO Broadcasting Consultants v. Martin (1999) 69 Cal.App.4th 489, 494-495, 81 Cal.Rptr.2d 639, fn. omitted, original italics.)
The Labor Commissioner has original jurisdiction to the exclusion of the superior court to determine disputes arising under the Act. (Buchwald v. Superior Court, supra, 254 Cal.App.2d 347, 62 Cal. Rptr. 364 [trial court erred in restraining artists from proceeding before the Labor Commissioner and ordering them to arbitrate the dispute under the terms of the agency agreement].)[3]Collier & Wallis, Ltd., v. Astor (1937) 9 Cal.2d 202, 205-206, 70 P.2d 171, on which the court in Buchwald relied, reversed an award of damages to a licensed talent agent on the ground that the controversy had not first been submitted to the Labor Commissioner. There the plaintiff sought commissions for securing motion picture employment for the defendant artist. Collier & Wallis, Ltd., held that any action brought in the superior court without first referring the matter to the Labor Commissioner and securing a determination is premature and cannot be maintained.
The Act has been broadly interpreted in favor of finding that the Labor Commissioner has jurisdiction. (See Garson v. Div. of Labor Enforcement (1949) 33 Cal.2d 861, 206 P.2d 368 [Labor Commissioner has original jurisdiction of a dispute involving both fees due under an agency contract and damages for wrongful discharge of the agency]; Humes v. MarGil Ventures, Inc. (1985) 174 Cal.App.3d 486, 494-495, 220 Cal.Rptr. 186 [Labor Commissioner has original jurisdiction to hear a claim that an agreement is void for violation of licensing requirement where the artist also brought an action in superior court for rescission based on unrelated fraud]; ABC Acceptance v. Delby (1957) 310 P.2d 712, 150 Cal.App.2d Supp. 826, 828 [Labor Commissioner has original jurisdiction of a dispute regarding money claimed to be due under an agency agreement, even though the parties had executed a promissory note for the sum].)
The fact that Stevens raised the Act defensively does not excuse her failure to refer the dispute to the Labor Commissioner. Regardless of whether the Act is raised affirmatively in the complaint or as a defense, the Labor Commissioner has original jurisdiction of the claim that a contract is illegal under the Act. Stevens's defense required the resolution of that issue. To the extent the court was called upon to entertain her position, the case is one "arising under" the Act for purposes *661 of section 1700.44, subdivision (a). To hold otherwise would result in the untenable position that the Commissioner's jurisdiction would depend upon whether a party chose to affirmatively seek relief under the Act or waited for enforcement by the opposing party. Such a rule could be used tactically to defeat the remedial purposes of the Act.
Waisbren v. Peppercorn Productions, Inc., supra, 41 Cal.App.4th 246, 48 Cal. Rptr.2d 437, in which the Act was raised defensively, does not discuss whether the controversy was first referred to the Labor Commissioner. Contrary to Stevens's position, the opinion is not authority for the proposition that a referral is not required. It simply does not address the issue.
Stevens urges that if we determine that the Labor Commissioner has original jurisdiction to the exclusion of the superior court, we must dismiss the entire action. We disagree. Styne brought his action based upon a common law breach of contract claim which did not on its face implicate the Act. He alleged breach of an oral contract to pay him 10 percent of the profits of a business venture and related counts. Stevens did not raise the Act as an affirmative defense and took no steps to bring her claim before the Labor Commissioner. In the absence of a determination that the Act defeats it, Styne's claim survives.

3. Statute of limitations

Section 1700.44, subdivision (c), provides: "No action or proceeding shall be brought pursuant to this chapter with respect to any violation which is alleged to have occurred more than one year prior to commencement of the action or proceeding." In Park v. Deftones (1999) 71 Cal. App.4th 1465, 84 Cal.Rptr.2d 616 (Deftones ), we held that a defense based upon illegality under the Act is not barred by the statute of limitations where the defendants petitioned before the Labor Commissioner within one year of the filing of the action to collect commissions under the challenged agreement. Here, however, Stevens failed to refer the matter to the Labor Commissioner within one year of even answering the complaint. Referral at this late date is barred by the Act's limitations period.
It was not necessary for us in Deftones to consider the outer limit of the one-year limitations period. We do so here. For the defensive application of the Act, the one-year period commences upon the artist's formal notice of the agent's claim. Therefore, the earliest starting point of the one-year period will ordinarily be when the artist is served with process. We select that date because of its certainty compared to determining the date upon which a defendant becomes aware of the action. We reject the filing date as a triggering event, because filing does not necessarily give the defendant notice of the action.
In order to avoid the harsh application of a "bright-line" rule, we recognize there may be unique factual situations where, at the time of service of process, the artist may not reasonably be aware that the plaintiff has engaged in activities within the Act. In such instance, the courts will have to sort out on a case-by-case basis when the artist was (or reasonably should have been) aware that the Act should be asserted as a defense. The artist would have one year from that point in time to defensively raise the Act and obtain a hearing under the Labor Code.
In the present case, Stevens was at all times aware of the role Styne played in her relationship with HSN and she was not misled by the complaint. Accordingly, any question as to the application of the Act arose when she was served with process, and she simply waited too long to assert it.
Stevens's proper course was to seek a stay of the judicial proceeding and submit the matter to the Labor Commissioner. Stevens's failure to do so in a timely manner *662 bars a judicial determination that the agreement is void under the Act. The trial court's decision to order a new trial because the jury was not instructed on the requirements of the Act was error.
Stevens urges that a statute of limitations may not defeat a position raised defensively. We agree that where an action to collect commissions is filed, and the defendant contends the agreement violates the Act, the limitations period does not bar a referral to the Labor Commissioner within one year after the defendant is served in the action. The defendant may not, however, wait until after a verdict in the superior court, as Stevens has done in this case, before referring the matter to the Labor Commissioner. As we stated in Deftones, we agree with the interpretation given section 1700.44, subdivision (c) by the Labor Commissioner in that case. (Moreno v. Park (Jan. 20, 1998, Lab. Comr.) No. 9-97, p. 4.) It interpreted the filing of the superior court action to collect commissions as a violation of the Act for purposes of the limitations period.

4. Additional grounds for new trial[**]

DISPOSITION
The order appealed from is reversed. Costs to appellant.
BOREN, P.J., and MALLANO, J.[***], concur.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part 4.
[1] All statutory references are to the Labor Code, unless otherwise indicated. The Talent Agencies Act is hereafter referred to as the Act.
[2] Procuring recording contracts, by itself, is expressly excluded from the licensing requirements of the Act. (§ 1700.4, subd. (a).)
[3] When Buchwald was decided, section 1700.44 was part of the Artists' Managers Act. It stated, "`In all cases of controversy arising under this chapter the parties involved shall refer the matters in dispute to the Labor Commissioner, who shall hear and determine the same, subject to an appeal within 10 days after determination, to the superior court where the same shall be heard de novo.'" (Buchwald, supra, 254 Cal.App.2d at p. 351, 62 Cal.Rptr. 364; Stats. 1959, ch. 888, § 1, pp. 2927.) This language also appeared in the predecessors to the Artists' Managers Act. (Buchwald, supra, at p. 357, 62 Cal.Rptr. 364; Stats.1923, ch. 412, p. 936.)
[**] See footnote *, ante.
[***] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.