[No. B165843. Second Dist., Div. Seven. Feb. 14, 2005.]

TIMOTHY J. YOO, as Trustee in Bankruptcy, etc., Plaintiff and Appellant,
v.
MARTHA ROBI, Defendant and Appellant.

**COUNSEL**

Terran T. Steinhart for Plaintiff and Appellant.

Allen Hyman for Defendant and Appellant.

**OPINION**

**JOHNSON, Acting P. J.**—Howard Wolf brought this action to recover a commission allegedly due him under a personal management contract with Paul Robi, one of the original members of the legendary singing group The Platters.[1] The trial court awarded judgment to Robi. Wolf and Robi both filed timely appeals. The principal issues in Wolf's appeal are whether Wolf violated the Talent Agencies Act (Lab. Code § 1700 et seq.) by procuring performance engagements for Robi without being licensed as a talent agency and, if so, whether such violation of the Act bars Wolf's recovery of a commission for procuring a recording engagement for Robi—an activity which the Act specifically exempts from the license requirement. In Robi's cross-appeal we must decide whether an appeal from a determination by the Labor Commissioner of a controversy arising under the Act may be filed in a pending superior court action between the parties to the controversy or must be initiated by a separate, independent action.

We conclude substantial evidence supports the trial court's finding Wolf procured performance engagements for Robi in violation of the Act thus rendering his contracts with Robi void and barring his recovery of a commission for procuring a recording contract for Robi. We further conclude an appeal from a determination by the Labor Commissioner of a controversy

---

[1] Neither of the principals to this agreement is a party to this case. Paul Robi died in 1989. His widow and successor in interest, Martha Robi, is the named defendant. After Wolf commenced this action Timothy J. Woo, the trustee in his previously filed bankruptcy proceeding, was substituted as plaintiff. For the sake of convenience and clarity we will refer to Wolf as if he was the plaintiff in this action and to Paul Robi as if he was the defendant.

arising under the Act may be filed either in a pending action between the parties to the controversy or in a separate, independent action.

## FACTS AND PROCEEDINGS BELOW

In April 1986 Robi entered into a contract with Jango Records to record a Platters record album in exchange for consideration including royalties based on the number of albums sold. The Platters recorded the album in June and July of 1986 but Jango never released it.

At the time Robi and The Platters recorded the album for Jango, Robi also had a contract with Wolf under which Wolf was to perform certain services for Robi. This contract covered the period November 1985 to November 1986 and was one of a series of one-year contracts with identical terms spanning the period November 1983 to February 1988.

Under these contracts Wolf agreed to: "[A]dvise and counsel in the selection of literary and artistic material; advise and counsel in any and all matters pertaining to public relations; advise and counsel with relation to the adoption of proper formats for presentation of [Robi's] artistic talents [and] in the determination of proper style, mood, setting, business and characterization in keeping with [Robi's] talents; advise and counsel the selection of artistic talent to assist, accompany or embellish [Robi's] artistic presentation; and advise and counsel with regard to general practices in the entertainment industry and with respect to such matters of which [Wolf] may have knowledge concerning compensation and privileges extended for similar artistic values."

As compensation for his services Wolf was to receive "a sum equal to 10% of any and all gross monies or other considerations which [Robi] may receive as a result of [his] activities in and throughout the entertainment, amusement and publishing industries . . . ." Paragraph 8 of the contracts further provided Robi would pay Wolf "a similar sum following the expiration of the term [of the contract] upon and with respect to any and all engagements, contracts and agreements entered into or substantially negotiated during the term hereof relating to any of the foregoing . . . ."

In entering into the contracts with Wolf, Robi acknowledged: "You [i.e., Wolf] have specifically advised me [i.e., Robi] that you are not a 'talent agent' but active [sic] solely as a personal manager, and that you are not licensed as a 'talent agent' under the Labor Code of the State of California; you have at all times advised me that you are <u>not</u> licensed to seek or obtain

employment or engagements for me and that you do not agree to do so, and you have made no representations to me, either oral or written, to the contrary."

Following Robi's death Martha Robi, his widow and successor in interest, licensed the manufacture of two record albums utilizing the recordings Robi and the Platters made for Jango Records.

Wolf filed this action alleging Paragraph 8 of his contract, quoted above, entitled him to a commission of 10 percent of the gross amount Robi earned from the sale of those albums. Robi filed a demurrer to the complaint which the trial court sustained and we overruled.[2] Robi then answered the complaint raising numerous affirmative defenses. Robi's answer, however, did not include as an affirmative defense a claim Wolf's contract with Robi was void and invalid because Wolf acted under the contract to procure employment or engagements for Robi without a license to do so in violation of the Act.[3]

Although Robi did not raise the invalidity of the contract as an affirmative defense, while this action was pending in the superior court Robi did raise the invalidity issue in a Petition to Determine Controversy filed with the California Labor Commissioner pursuant to section 1700.44.[4] The petition alleged throughout the period 1983 through 1988 Wolf acted as an unlicensed talent agency for Robi and therefore the 1983 through 1988 contracts providing for commissions for Wolf's services, including the contract in effect at the time of the Jango recordings, were void as a matter of law. The court stayed proceedings in this action pending the Labor Commissioner's determination on Robi's petition.

The Labor Commissioner ruled in Robi's favor and issued a decision ordering "the 1983, 1984, 1985 and subsequent oral contracts between [Robi and Wolf] are unlawful and void ab initio. [Wolf] has no enforceable rights under those contracts.]"

---

[2] *Wolf v. Robi* (July 12, 1999, B123665) (nonpub. opn.).

[3] Labor Code section 1700.4, subdivision (a) defines a talent agency as "a person or corporation who engages in the occupation of procuring, offering, promising, or attempting to procure employment or engagements for an artist . . . ." Labor Code section 1700.5 states: "No person shall engage in or carry on the occupation of a talent agency without first procuring a license therefore from the Labor Commissioner." (All future statutory references are to the Labor Code unless otherwise noted.)

[4] Section 1700.44, subdivision (a) states: "In cases of controversy arising under this chapter, the parties involved shall refer the matters in dispute to the Labor Commissioner, who shall hear and determine the same . . . ."

Wolf then filed a notice in the present action appealing the Labor Commissioner's decision and requesting a trial de novo.[5] He also filed a similar notice of appeal in another action pending between him and Robi involving the contract in effect from November 1983 to November 1984. The notices of appeal stated the appeals were from "the Determination of Controversy by the California State Labor Commissioner" and requested "a trial de novo before this tribunal in the above pending case." The notices did not state the appeal was limited to a particular contract between the parties.

The present action proceeded to a trial by the court. Over Wolf's objection the court determined the notice of appeal and request for trial de novo filed in this case covered the entire determination by the Labor Commissioner and therefore the court would conduct a trial de novo as to the validity of all the Wolf-Robi contracts between 1983 and 1988, not just the 1985–1986 contract covering the Jango recordings on which the present action is based. The court also ruled if the trial de novo led to a finding the 1985–1986 contract was invalid such a finding would establish a complete defense to the present action and result in a judgment for Robi.

The evidence was undisputed Wolf did not hold a talent agency license during the period in question and Robi was an "artist" for purposes of section 1700.4, subdivision (a). After hearing testimony on the validity of the contracts the court ruled "there is substantial evidence supporting this court's finding that during each of the years 1983, 1984, 1985, 1986, 1987 and 1988 Wolf did in fact procure, offered to procure, promised Paul Robi that he would procure and that Wolf, in fact, did procure and attempted to procure employment and engagements for 'Paul Robi performing as The Platters' . . . ." The court further found during the years in question Wolf, as his "primary and principal activity on behalf of Paul Robi, 'obtained,' 'acquired,' caused to happen,' or 'brought about' or 'negotiated' or undertook 'efforts to secure,' 'employment and/or engagements' for Paul Robi . . . ."

Based on these findings the trial court declared all the contracts between Robi and Wolf "void ab initio and unenforceable for all purposes." Because Wolf's complaint was "based solely upon claims of income that Wolf would have been entitled to receive under the [1985–1986] management agreement" which the court found to be "void ab initio" the court concluded Wolf's complaint "must be dismissed and is ordered dismissed with prejudice." The court followed its statement of decision with a judgment dismissing Wolf's complaint with prejudice.

[5] See section 1700.44, subdivision (a) discussed in part I, *post.*

Wolf filed a timely appeal from the judgment. Robi filed a cross-appeal from the judgment insofar as it constitutes a judgment on a trial de novo of the issues determined by the Labor Commissioner. Robi contends Wolf failed to perfect an appeal from the Labor Commissioner's determination. We reject the contentions of both parties and affirm the judgment.

## DISCUSSION

I. *THE TRIAL COURT HAD JURISDICTION TO HEAR WOLF'S APPEAL FROM THE LABOR COMMISSIONER'S DETERMINATION AND PROPERLY CONDUCTED A TRIAL DE NOVO AS TO ALL CONTRACTS PUT IN ISSUE BY ROBI'S PETITION TO THE COMMISSIONER.*

Before turning to the merits of the controversy between Wolf and Robi we address the parties' issues involving Wolf's appeal from the Labor Commissioner's determination holding the contracts invalid.

### A. *Procedural Background.*

Robi contends Wolf did not perfect a timely appeal from the Labor Commissioner's determination and therefore he was not entitled to a trial de novo on the validity of his contracts with Robi. The appeal was defective, Robi maintains, because it should have been filed as a separate and independent action rather than filed as part of ongoing litigation between Wolf and Robi. There being no effective appeal from the Labor Commissioner's determination, Robi argues, that determination was res judicata and entitled Robi to a judgment as a matter of law in this action by Wolf for a commission under the 1985–1986 contract.

The question whether Wolf properly appealed from the Labor Commissioner's determination by filing a notice of appeal in this action is complicated by the fact there was another action pending between Wolf and Robi involving commissions Wolf claimed were due him under his 1983–1984 contract with Robi.[6] In that action the parties had stipulated to binding arbitration on Wolf's claims with the trial court retaining jurisdiction only "for the purposes of enforcing the arbitration and arbitration award." During the course of the arbitration Robi filed the petition with the Labor Commissioner challenging the validity of the 1983–1984 contract, (the contract at issue in the arbitration), as well as the validity of the 1985–1986 contract (the contract at issue

---

[6] *Wolf v. Robi* (Super. Ct. L.A. County, May 21, 1997, No. BC144404.)

in the action now before us). Like the proceedings in the present case, the arbitration proceedings were stayed pending the Labor Commissioner's determination of the petition. When the Commissioner rendered his determination holding all the Wolf-Robi contracts invalid Wolf filed an appeal and request for trial de novo in the superior court action which is before us, in the other superior court action and in the arbitration proceeding itself. Each notice of appeal states Wolf "appeals from the Determination of Controversy by the California State Labor Commissioner" and "requests a trial de novo before this tribunal in the above pending case."

The trial court ruled the notice of appeal and request for trial de novo filed in this action was sufficient to entitle Wolf to a trial de novo on the Labor Commissioner's determination. Robi appeals from this ruling. The court further ruled the notice filed in this action constituted an appeal and request for trial de novo as to all the contracts adjudicated in the Labor Commissioner's determination, not just the 1985–1986 contract at issue in the present case. Wolf appeals from this ruling.

### B. *The Court Properly Tried the Validity of All the Wolf-Robi Contracts.*

■ In *Styne v. Stevens* our Supreme Court held when a colorable violation of the Act is raised in defense to a court suit the suit must be stayed pending a determination of the claim by the Labor Commissioner.[7] Under section 1700.44, subdivision (a) the Commissioner's determination with respect to a controversy under the Act is "subject to an appeal within 10 days after determination, to the superior court where the same shall be heard de novo."

Robi argues an appeal from a decision of the Commissioner and request for trial de novo must be instituted as a separate proceeding in the superior court. It cannot be incorporated into existing litigation between the parties which has been stayed pending the Commissioner's decision on issues raised in such litigation. Because Wolf did not institute a separate proceeding he did not perfect a timely appeal from the Commissioner's decision. Therefore, Robi concludes, the Commissioner's decision is res judicata in the present case and completely disposes of Wolf's claim.[8] We are not persuaded.

■ Section 1700.44, subdivision (a) only requires the appeal from the Labor Commissioner's determination be filed and heard in the superior court. There is no requirement in the statute the appeal be brought as a separate proceeding, and the cases cited by Robi do not impose such a

---

[7] *Styne v. Stevens* (2001) 26 Cal.4th 42, 59 [109 Cal.Rptr.2d 14, 26 P.3d 343].

[8] *REO Broadcasting Consultants v. Martin* (1999) 69 Cal.App.4th 489, 501 [81 Cal.Rptr.2d 639].

requirement.[9] On the other hand there are no cases holding the appeal and trial de novo may be made part of the existing superior court case which spawned the Labor Commissioner's determination.[10]

We see nothing wrong with filing the notice of appeal and request for trial de novo in a pending action between the parties when the pending action includes the same issues adjudicated by the Commissioner. From a practical standpoint it makes sense that if an existing superior court action is stayed so the Labor Commissioner can determine in the first instance whether there has been a violation of the Act, an appeal from the Commissioner's determination should be heard in the action which involves the issues determined by the Commissioner. This procedure conserves the time and resources of the parties and the court because a trial de novo on the alleged violation of the Act is equivalent to first trying the defendant's Act-based defense to the plaintiff's suit.[11] Furthermore, a decision in the defendant's favor would not only resolve the appeal from the Labor Commissioner's determination, in most cases it would result in termination of the plaintiff's action. Thus, when the issues in the proceedings before the Labor Commissioner and in the pending superior court action are the same, requiring a separate, independent action be filed in order to effectuate an appeal from the Labor Commissioner's determination generally would not benefit either party but only result in additional costs, delay and more paperwork for the court staff.

■ This is not to say a party aggrieved by the Commissioner's determination is precluded from filing a separate, independent action for review under section 1700.44, subdivision (a) whenever there is a pending action between the parties raising the same issues. We only hold a party is not required to file a separate action, and a notice of appeal in a pending action is sufficient to entitle the party to a trial de novo on the Commissioner's determination.

■ We believe the option to file an appeal in an independent action or in a pending action should also apply where, as here, the Commissioner's

---

[9] Robi cites us to *Styne v. Stevens, supra*, 26 Cal.4th 42 (see fn. 7, *ante*), and *Sales Dimensions v. Superior Court* (1979) 90 Cal.App.3d 757 [153 Cal.Rptr. 690]. Neither of these cases addressed the question whether the appeal and trial de novo had to be instituted in an independent action.

[10] This appears to have been the procedure followed in *Greenfield v. Superior Court* (2003) 106 Cal.App.4th 743, 746 [131 Cal.Rptr.2d 179] as shown by the superior court's docket, of which we take judicial notice.

[11] Code of Civil Procedure section 1048, subdivision (b) allows the trial court to try the issues in a case in the order most convenient and "conducive to expedition and economy." Code of Civil Procedure 598 permits the trial court to first try the issue of liability and if the decision of the court or jury is in favor of the defendant "judgment in favor of such party shall thereupon be entered."

determination adjudicates a combination of issues raised in two or more pending actions between the parties. The parties may be satisfied to have all the issues in the Commissioner's determination tried de novo in one action, be it one of the existing actions or a separate, independent action. If, on the other hand, a party wants to separate the issues to be determined in a trial de novo so they align with the issues raised in each of the pending actions that party may move to consolidate those issues for trial.[12] For example if case 1 involves issue A and case 2 involves issue B and the Labor Commissioner ruled on A and B in one decision, a party could move to consolidate the trial de novo on issue A with the trial in case 1 and the trial de novo on issue B in case 2.

In the present case, if Wolf did not want the 1983–1984 contract tried in the same action as the 1985–1986 contract he should have moved to consolidate the trial de novo on the validity of the 1983–1984 contract with the pending action which raised that issue. He did not. He has no complaint.

## II. *SUBSTANTIAL EVIDENCE SUPPORTS THE TRIAL COURT'S FINDING WOLF VIOLATED THE TALENT AGENCIES ACT IN 1983 THROUGH 1988 BY PROCURING EMPLOYMENT FOR ROBI WITHOUT BEING LICENSED AS A TALENT AGENCY.*

As discussed above the trial court found during each of the years 1983 through 1988 Wolf, acting without a talent agency license, procured and attempted to procure employment and engagements for Robi as an artist, in violation of section 1700.5.[13] Wolf contends these findings are not supported by substantial evidence.

We will focus our discussion on the evidence of Wolf's activities under the contract in effect from November 1985 to November 1986 because it was in this period Robi made the Jango recordings which form the basis for Wolf's claim to compensation in the present action. We have, however, reviewed the evidence as to the other contracts and conclude substantial evidence supports the trial court's findings as to each of the contracts.

---

[12] See *Sales Dimensions v. Superior Court, supra,* 90 Cal.App.3d at p. 764. Code of Civil Procedure section 1048, subdivision (a) states: "When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay." Actions between the parties to the Commissioner's determination are unlikely to be pending in different courts. If they are, then a party seeking to align the issues should move for coordination of the actions under Code of Civil Procedure section 404.

[13] The trial court also found Wolf's procuring and attempting to procure employment for Robi constituted Wolf's "principal and primary activities" on behalf of Robi during the years in question. Wolf does not challenge this finding.

Leaving aside Wolf's admission in his opening brief he "work[ed] through regional agents all over America to procure work for [Robi]," the record is replete with illustrations of Wolf's procurement activities on Robi's behalf.

Robi's widow, Martha, testified Robi had no contracts with talent agents in 1986 and that Wolf handled the negotiations for Robi's appearances. She recalled, for example, Wolf obtained an engagement for Robi at the Santa Clara County fair in August 1986. Donnie Brooks, a talent agent,[14] testified he represented Santa Clara in negotiating with Wolf over Robi's appearance at the fair. Brooks also testified he negotiated with Wolf to have Robi perform for one of Brooks's clients in Bristol, Connecticut, in April 1986. The evidence showed other occasions in 1986 in which Wolf procured or attempted to procure performance engagements for Robi. In addition, Wolf testified he sent out promotional packages "in order to solicit" engagements for Robi and negotiated the details of potential performance contracts offered to him as Robi's agent by other talent agents.

The evidence also showed Wolf negotiated the Jango Records contract on behalf of Robi.

Wolf contends sending out promotional packages and negotiating performance contracts do not constitute "procuring" or "attempting to procure" employment within the meaning of section 1700.4, subdivision (a). If promoting an artist requires a talent agency license, Wolf argues, then public relations firms, publicists and advertising agencies all would have to be licensed as talent agencies. Wolf further maintains when personal managers negotiate performance contracts on behalf of their artist clients they are merely acting as spokespersons for the artists so the artists can concentrate on their artistry and not have to spend their time conversing with booking agents.

We need not decide in this case whether public relations firms, publicists and advertising agencies should be required to register as talent agencies because Wolf does not contend he is any of these. We note, however, a rational distinction can be drawn between promoting an artist to the public generally and "[t]he talent agent's primary function [of marketing] the artist's talent to buyers within the entertainment industry."[15] Furthermore, the Act was intended to remedy abuse of persons seeking employment in the entertainment industry as shown by its provisions requiring the fingerprinting

---

[14] Brooks often performed with Robi and The Platters, singing his hit song "Mission Bell."

[15] O'Brien, *Regulation of Attorneys Under California's Talent Agencies Act: A Tautological Approach to Protecting Artists* (1992) 80 Cal. L. Rev. 471, 478 (O'Brien).

of license applicants, investigations into their character, posting of bonds, and Labor Commission approval of talent agency contracts as well as prohibiting a talent agent from sending an artist to an unsafe place, sending a minor to a saloon and allowing prostitutes, gamblers, drunks and pimps to frequent or be employed in a talent agent's place of business.[16] We hardly think these safeguards were necessary to protect an artist from "an under-assistant West Coast promo man."[17]

■ There is also a distinction between being the spokesperson for a client on a contract and being the negotiator for a client on a contract. The spokesperson merely passes on the client's desires or demands to the person who is contemplating engaging the client. But the function of a negotiator is not merely to pass messages back and forth between the principals. Negotiators use their understanding of their clients' values, desires and demands, the other parties' values, desires and demands and their own discretion and intuition to bring about through give-and-take a deal acceptable to the principals.[18]

■ While personal managers often serve "as spokespersons for the artists"[19] talent agents typically serve as negotiators "negotiating the particulars of employment."[20] Obviously, a talent agent might act as a spokesperson for a client just as a personal manager might act as a negotiator for a client. The role a personal manager played with respect to any given contract is a question of fact. Here the evidence showed with respect to Robi's appearances in Santa Clara and Bristol, Connecticut, that Wolf negotiated the terms of the engagements with Brooks and presented the completed agreements to Robi for his signature. We concur in the trial court's findings that in these and numerous other matters Wolf acted in the role of a talent agency.

### III. WOLF'S VIOLATION OF THE ACT BARS HIS ATTEMPT TO RECOVER ANY COMMISSIONS UNDER THE 1986 CONTRACT

Wolf maintains even if he procured engagements for Robi in 1986 in violation of the Act, Robi waived this defense by not specifically pleading it in the answer to the complaint. Alternatively he argues the trial court should

---

[16] Sections 1700.6 through 1700.35; and see *Waisbren v. Peppercorn Productions, Inc.* (1995) 41 Cal.App.4th 246, 254 [48 Cal.Rptr.2d 437].

[17] Nanker Phelge, "The Under Assistant West Coast Promotion Man."

[18] Stuckey, *Understanding Casablanca: A Values-Based Approach To Legal Negotiations* (1998) 5 Clinical L. Rev. 211, 223–224.

[19] See *Park v. Deftones* (1999) 71 Cal.App.4th 1465, 1470 [84 Cal.Rptr.2d 616].

[20] O'Brien, *supra*, 80 Cal. L. Rev. at page 479.

have severed his legal activities from those which were illegal and awarded him his commission arising from the Jango Records contract which was not earned in violation of the Act. We reject both contentions.

### A. *Robi Did Not Waive the Claim of Illegality.*

██ This case falls squarely within the well-settled rule a defense of illegality based on public policy is not waived by the defendant's failure to include it as an affirmative defense in the answer to the complaint. This rule applies because, unlike other affirmative defenses which may be waived if not pled,[21] "when the evidence shows that the plaintiff in substance seeks to enforce an illegal contract or recover compensation for an illegal act, the court has both the power and duty to ascertain the true facts in order that it may not unwittingly lend its assistance to the consummation or encouragement of what public policy forbids."[22] Furthermore, "[t]he reasons for refusing to enforce an illegal agreement," and by implication for declining to find a waiver of the illegality, "are particularly strong in cases . . . in which the statute invalidating the contract envisions the protection of one class of persons from the unlicensed and unsupervised activities of another."[23] As discussed above, the Talent Agencies Act was adopted to protect artists seeking employment.[24] Thus, even though there may be some exceptions to the rule of unwaivablility,[25] if a defense based on the plaintiff's lack of a contractor's license is not waived by failing to specifically plead it[26] we see no reason why we should reach a different result in the case of a defense based on the plaintiff's lack of a talent agency license.

### B. *Wolf Is Not Entitled to Have His Commission for a Legal Activity Severed from His Commissions for Illegal Activities.*

██ California courts have uniformly held a contract under which an unlicensed party procures or attempts to procure employment for an artist in violation of the Act is void ab initio and the party procuring the employment

---

[21] See e.g. *California Concrete Co. v. Beverly Hills Savings & Loan Assn.* (1989) 215 Cal.App.3d 260, 271–273 [261 Cal.Rptr. 484].

[22] *Lewis & Queen v. N. M. Ball Sons* (1957) 48 Cal.2d 141, 147–148 [308 P.2d 713] (affirmative defense based on the plaintiff's lack of contractor's license not waived by the defendant's failure to raise it in the answer).

[23] *Stenger v. Anderson* (1967) 66 Cal.2d 970, 978 [59 Cal.Rptr. 844, 429 P.2d 164].

[24] *Waisbren v. Peppercorn Productions, Inc., supra,* 41 Cal.App.4th at page 254; see discussion at pages 1102-1103, *ante.*

[25] See *Styne v. Stevens, supra,* 26 Cal.4th at page 54, footnote 5 (but noting the issue was not presented in the case at bench).

[26] *Lewis & Queen v. N. M. Ball Sons, supra,* 48 Cal.2d at pages 147–148.

is barred from recovering commissions for *any* activities under the contract.[27] This rule applies even if, as in the present case, the contract does not call for the procuring of employment or contains an affirmative statement the party seeking compensation has not agreed to obtain employment for the artist.[28] The courts have also unanimously denied all recovery to personal managers even when the majority of the managers' activities did not require a talent agency license and the activities which did require a license were minimal and incidental.[29]

The rationale for denying a personal manager recovery even for activities which were entirely legal is based on the public policy of the Act to deter personal managers from engaging in illegal activities.[30] Knowing they will receive no help from the courts in recovering for their legal activities, managers are less likely to enter into illegal arrangements.[31] In *Waisbren*, the court observed one reason the Legislature did not enact criminal penalties for violation of the Act was "because 'the most effective weapon for assuring compliance with the Act is the power . . . to declare any contract entered into between the parties void from the inception.' "[32]

■ Wolf attempts to distinguish previous cases denying recovery for legal activities from the present case on the ground the only compensation he is seeking is his commission for negotiating Robi's recording contract with Jango Records. Negotiating recording contracts is specifically exempted from the licensing requirement of the Act.[33] Therefore, he argues, there is no public policy reason for denying him the compensation he seeks. On the

---

[27] *Styne v. Stevens, supra,* 26 Cal.4th at page 51; *Park v. Deftones, supra,* 71 Cal.App.4th at page 1470; *Waisbren v. Peppercorn Productions, Inc., supra,* 41 Cal.App.4th at pages 250, 261–262.

[28] *Buchwald v. Superior Court* (1967) 254 Cal.App.2d 347, 351 [62 Cal.Rptr. 364]. The court in *Buchwald* reasoned: "Clearly the Act may not be circumvented by allowing language of the written contract to control [otherwise] [t]he form of the transaction, rather than its substance would control. (*Id.* at p. 355.)

[29] *Park v. Deftones, supra,* 71 Cal.App.4th at page 1470; *Waisbren v. Peppercorn Productions, Inc., supra,* 41 Cal.App.4th at pages 250, 261–262.

[30] This rationale is not limited to actions for breach of contract. It also applies to actions seeking recovery on theories of unjust enrichment or quantum meruit. (*Waisbren v. Peppercorn Productions, Inc., supra,* 41 Cal.App.4th at pp. 250, fn. 2, 262.)

[31] *Waisbren v. Peppercorn Productions, Inc., supra,* 41 Cal.App.4th at page 262, citing *Lewis & Queen v. N. M. Ball Sons, supra,* 48 Cal.2d at page 150.

[32] *Waisbren v. Peppercorn Productions, Inc., supra,* 41 Cal.App.4th at page 262, quoting from a 1985 report by the California Entertainment Commission.

[33] Section 1700.4, subdivision (a), states: "[T]he activities of procuring, offering, or promising to procure recording contracts for an artist or artists shall not of itself subject a person or corporation to regulation and licensing under this chapter."

contrary, he maintains, Civil Code section 1599 covers the circumstances of this case and entitles him to compensation for the recording contract.[34]

If negotiating the recording contract with Jango Records in 1986 was the only employment procurement Wolf engaged in on behalf of Robi this case would have to be decided differently because, as Wolf correctly points out, procuring recording contracts does not require a talent agency license. But the evidence shows Wolf engaged in numerous other employment procurement activities on behalf of Robi during the term of the 1986 contract. The fact procuring recording contracts without a license does not in itself violate public policy is not determinative. The same thing could be said about numerous other activities personal managers engage in which do not require a license such as counseling artists in the development of their professional careers, selecting material for their performances, managing their money, and the like. Engaging in those activities without a talent agency license does not violate public policy but those activities are nevertheless noncompensable if they are mixed in with activities which do require a license because of the overriding public policy of deterring unlicensed activities.[35]

■ Furthermore, although Civil Code section 1599 authorizes a court to sever the illegal object of a contract from the legal it does not require the court to do so. The decision whether to sever the illegal term of a contract is informed by equitable considerations.[36] Here the trade-off is an unbargained for benefit to Robi (he receives a service he does not have to pay for) versus a dilution of the deterrent effect of invalidating the entire contract (managers will be more careful to avoid unlawful activities if they know they will not get paid for the lawful ones). ■ For the reasons discussed above,[37] we believe the public policy underlying the Act is best effectuated by denying all recovery, even for activities which did not require a talent agency license.

We conclude, therefore, the trial court correctly entered judgment for Robi on Wolf's complaint for a commission based on the Jango Records contract.

---

[34] Civil Code section 1599 provides: "Where a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest."

[35] *Waisbren v. Peppercorn Productions, Inc., supra*, 41 Cal.App.4th at pages 261–262.

[36] *Oakland-Alameda County Coliseum Authority v. CC Partners* (2002) 101 Cal.App.4th 635, 646–647 [124 Cal.Rptr.2d 363] and cases cited.

[37] See discussion at page 1104, *ante*.

## DISPOSITION

The judgment is affirmed. Respondent to receive her costs on appeal.

Woods, J., and Zelon, J., concurred.

A petition for a rehearing was denied March 9, 2005, and the opinion was modified to read as printed above. The petition of appellant Timothy J. Yoo for review by the Supreme Court was denied May 11, 2005.